100 N.J. Super. 287 (1968)
241 A.2d 671
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN ULESKY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Monmouth County Court, Law Division.
Decided March 28, 1968.
*291 Mr. Harold Feinberg, attorney for plaintiff-respondent.
Mr. Paul J. Feldman, attorney for defendant-appellant.
McGOWAN, J.C.C.
This is an appeal from the Municipal Court of the Borough of Belmar on a trial de novo under the Rules governing such appeals. The defendant was convicted of violating Chapter 3 of the Revised Ordinances of 1966 of the Borough of Belmar, specifically section 3-1.1 through 3-1.6 of that Chapter.[1] The ordinance requires that every person who has been convicted of a misdemeanor or high misdemeanor in New Jersey or any other state within the past ten years and has not received a full executive pardon shall, upon residing in Belmar or remaining in Belmar for more than 24 hours, register with the chief of police. Revelation of pertinent details of the crime committed and his *292 present residence are required. Fingerprinting and photographing are also required. The ordinance then provides for the issuance of a registration card to be carried at all times while said person is in the Borough. The ordinance also provides for a violation for failure to register, failure to carry a card or for giving false information.
The case was submitted on stipulation and no testimony was presented. It was stipulated that the defendant-appellant violated the terms of this ordinance and that he was convicted in the Hudson County Court on February 23, 1965 of Forgery and False Pretense in violation of N.J.S. 2A:109-1 and N.J.S. 2A:111-1, which is a crime within the ordinance definition of a crime. He also admitted that he had notice of the ordinance and failed to register in accordance with its requirements. Similar ordinances of 19 other Monmouth County communities were also marked into evidence by consent of the parties. These contain varying residence requirements, and in some, immediate registration is required.
In this hearing the sole issue presented to this court is whether the ordinance of the Borough of Belmar requiring criminal registration is valid.
*293 The defendant-appellant makes a broad frontal attack upon the validity and constitutionality of the ordinance in that, he asserts:
1. The Borough does not have the power to enact such an ordinance;
2. The ordinance violates defendant-appellant's constitutional rights in that;
(a) The ordinance violates the equal protection clause of the Federal and State Constitutions;
(b) The ordinance violates the right to travel and interferes with interstate commerce;
(c) The ordinance constitutes both an ex post facto law and a bill of attainder.
(d) The ordinance violates the due process clause of the Federal and State Constitutions.
3. The ordinance is pre-empted by State Law.
The Borough denies each one of these positions and also affirmatively argues that the County Court does not have the power in this proceeding to determine constitutional questions.
Initially, it is important to note that the State was represented at trial and argument by the Borough Attorney of Belmar, the Attorney-General of New Jersey refusing to intercede at this level. It is also interesting to note that as of *294 this date the research of counsel and of the court indicates that there is no reported decision in New Jersey regarding the validity of local criminal registration ordinances such as we have in this case and, therefore, this court is concerned with a novel question for solution.
The court takes judicial notice of the fact that Belmar is located on the Atlantic coast in central Monmouth County in an area whose economy is predicated largely on seasonal revenues; its winter population is just over 5,000 but during the summer months there is a tremendous increase. It is urged and the court finds that in such resort communities special problems arise involving the security, safety, and welfare of such a community and its inhabitants with a great influx of transient vacationers and employees of resort establishments; motels, restaurants, night clubs and other places of attraction to the tourist trade. The problems in Belmar are compounded by its close proximity to two race tracks. Monmouth Park and Freehold Raceway, which remain open during the greater part of the resort season, each year.
With this background in mind, we come to the overriding policy of the courts in any attack upon the validity *295 of a municipal ordinance; that is, the strong presumption of constitutionality with which the ordinance is cloaked. See New Jersey Chapter American Institute of Planners v. New Jersey State Board of Professional Planners, 48 N.J. 581, 609 (1967); Roe v. Kervick, 42 N.J. 191, 229 (1964). A legislative act will not be declared void unless its repugnancy to the constitution is clear beyond a reasonable doubt. To declare a statute unconstitutional is a judicial power to be delicately exercised. Harvey v. Essex County Board of Freeholders, 30 N.J. 381, 386 (1959). Justice Francis, in discussing the presumption in Jones v. Haridor Realty Co., 37 N.J. 384 (1962) said:
"One of the basic functions of government is to safeguard the health, safety and welfare of its people. Upon the appearance of conditions detrimental to their welfare, it has the duty to apply remedial measures. The courts in turn are required to respect and sustain such efforts as an exercise of the legislative police power so long as they are not clearly arbitrary and are reasonably related to the objective sought to be attained." (at p. 393)
The wisdom of the legislature of the means it selects are not subject to review or interference by the courts except in the protection of fundamental constitutional rights. Gundaker Central Motors v. Gassert, 23 N.J. 71, 81 (1956). The judiciary does not pass upon the wisdom of a municipal ordinance nor does it nullify decisions of a governing body on the subject of local welfare merely because a debatable issue is presented. Fred v. Mayor and Council of Old Tappan Borough, 10 N.J. 515 (1952).
This test of constitutionality and the presumption attending thereto is even greater at the trial level. Neeld v. Automotive Products Credit Association, 21 N.J. Super. 159 (Cty. Ct. 1952). In Neeld, supra, Judge Fulop, discussing a price fixing statute said:
"It is clear that it is not the function of this court to pioneer in the field of constitutional law. The presumption of constitutionality must be applied with greater force here than in the appellate courts. *296 The pattern of the law must be drawn by the appellate courts. The trial courts, especially those of limited jurisdiction, must follow, not lead." (at p. 161)
This judicial policy was also affirmed by the Appellate Division in State v. Cannarozzi, 77 N.J. Super. 236 (App. Div. 1962), in an appeal from an acquittal for violation of the Unemployment Compensation Law. That court commented that inferior courts should assume an act of the Legislature to be constitutional unless it so clearly conflicts with the Constitution as to leave no reasonable doubt of its defectiveness. Therefore, in order for this court to determine the ordinance under consideration to be invalid, it must be shown to be unconstitutional or an abuse of the power of the municipality beyond a reasonable doubt, and the court determines that the defendant has failed to make such a showing on this point.
Proceeding now to consider defendant's argument that the Borough of Belmar does not have the statutory power to pass such an ordinance, I find that the governing body of every municipality derives its power from N.J.S.A. 40:48-1. It may make, amend, repeal and enforce ordinances to:
"Maintain order, to prevent vice, drunkenness and immorality; to preserve the public peace and order; to prevent and quell riots, disturbances and disorderly assemblages."
This general power is broadened by N.J.S.A. 40:48-2, which reads:
"Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law."
The statute outlines a basic test which can be categorized as necessity or the public need and it has been held that:
*297 A police regulation, in this regard shall not go beyond the demands of the public interest which vindicates its exercise, * * *; an exercise of power that exceeds the bounds of reasonable necessity would run afoul of the fundamental common right to engage in a lawful pursuit and of the right of private property secured by the Fifth and Fourteenth Amendments of the Federal Constitution and (Art. I, par. 1) * * * of the State Constitution." Reingold v. Harper, 6 N.J. 182, 191 (1951)
However, liberal construction of ordinances adopted under the statute is made mandatory by our Constitution of 1947 (Art. IV, § VII, par. 11) and there attaches to all such ordinances a presumption of validity not to be overcome unless the evidence clearly establishes its unreasonableness. Vickers v. Twp. Com. of Gloucester Twp., 37 N.J. 232 (1962). The leading case on the exercise of police power by a municipality and the limitations thereupon, is N.J. Good Humor, Inc. v. Bradley Beach, 124 N.J.L. 162 (E. & A. 1939) and it is stated by the court in the following language:
"There cannot be in the name of police regulation an unreasonable and oppressive curtailment of personal or property rights. A measure that goes fairly beyond the public need designed to be served does not take the category of a valid police regulation." (at p. 168)
There are many cases which hold that a municipality has a legal right to pass an ordinance which promotes the safety, health, morals and general welfare of the community. Certainly a municipality has the necessary power to legislate as may be demanded by the public interest. In the present case problems of law enforcement and protection of the public are clearly proper for municipal confrontation and within the public need. The Borough acknowledges a need for this method of crime detection and prevention, even though the number of registrants is low.[2] Here the peculiar *298 problems of the resort community must be taken into consideration. With a population increase, the job of police officers in providing security and safety to its citizens becomes proportionally difficult. Surely, the municipality has the right to know who is presently residing therein. Rapidly climbing crime figures in small municipalities as well as the large metropolitan cities, evidence the need for greater police powers within the framework of the Constitution. The device of requiring individuals to register with local authorities appears to be one of those powers. The ordinance allows the police to have an instant and readily available list of suspects justified upon the theory of the great number of recidivists well known in modern criminology. The police are also supplied with a tool for preventing crime in that they can make a lawful arrest of one defined in the ordinance who has failed to register and has secreted himself in the community preparing to participate in illegal activity. Thus it can be said that it is in the public interest of Belmar to require those persons to register, and is well within the powers conferred by N.J.S.A. 40:48-1 and N.J.S.A. 40:48-2, and this court should not substitute its judgment for that of the governing body in such a situation. Amelchenko v. Borough of Freehold, 42 N.J. 541 (1964); Livingston Twp. v. Marchev, 85 N.J. Super. 428 (App. Div. 1964).
It is argued by the defendant-appellant basically that compliance with the terms of the statute places an undue burden upon the individual by requiring him to register and carry a registration card. Recently, in the case of State v. Kabayama, 98 N.J. Super. 85 (App. Div. 1967), Judge Carton commented upon a similar burden pertaining to the right of policemen to demand that a motorist exhibit his license and registration at a roadblock. He said:
"It is now generally recognized that there is a common need by all mankind to be left alone. Nearly all societies have characteristically granted every man a reservoir of utter security. Referring to the importance which the makers of the United States Constitution attached to this right, Mr. Justice Brandeis, dissenting, in Olmstead *299 v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944, 956 (1928), said:
`They conferred, as against the government, the right to be left alone  the most comprehensive of rights and the right most valued by civilized men. To protect that right, every unjustifiable intrusion by the government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment. * * * The individual's basic claim to be alone is not an absolute one. It is recognized that certain intrusions on the privacy of the individual may be justified in the public interest'" (Emphasis added) (at p. 87)
The state of New Jersey has recognized a need for registration in at least one field of criminal law, that is in the detection and control of the narcotics offenders. N.J.S. 2A:169A-2 specifically provides that all New Jersey residents who were convicted of crimes relating to narcotic drugs shall register with the chief of police of the municipality in which he resides. Such requirement evidences the legislative intent that registration is a necessary tool of effective police work. Defendant argues in this regard, that the failure of the State to require any other criminal registration presents a negative legislative intent against other registration law. However, the municipality may exercise appropriate police power for the protection of purely local interests, by general or specific local legislation, where the local regulation relates to an aspect not already subject to state statute or regulation, or is not in conflict therewith, or where the state has not acted pursuant to powers granted to it. Mogolefsky v. Schoem, 50 N.J. 588, 598 (1967); Chaiet v. East Orange, 136 N.J.L. 375 (Sup. Ct. 1948).
There is no doubt that the requirement that one who comes within the statutory definition must register, casts a burden upon him. All restrictive legislation creates some hardship for some members of the community but this can easily be justified on the necessity of promoting the general welfare. Thus the fact that the ordinance burdens some individuals does not per se or factually here render it arbitrary or unreasonable.
*300 Part of defendant's objection to the ordinance is the fingerprint requirement. But fingerprinting no longer bears the odium of bygone days when generally only persons charged with crime were fingerprinted. Presently, many people in all walks of life, including civil servants and even private citizens seeking gun permits, freely submit to this beneficent identification process. Burton v. Sills, 99 N.J. Super. 459 (App. Div. 1968). Those covered by this ordinance certainly would not argue that this in any way involved self incrimination as they have already been convicted of crime. The Supreme Court, in upholding the rights of the individual especially those guaranteed by the Fourth Amendment, has done so with stated awareness of the practical needs of effective criminal investigagation and law enforcement in the States and hence in a local municipality. See State v. Dilley, 49 N.J. 460, 470 (1967). Here, we have an ordinance which conforms to that standard of aiding the practical needs of effective criminal investigation and law enforcement. Judge Kilkenny speaking for our Appellate Division in a recent opinion, upholding the validity of portions of the gun permit law, commented in language particularly appropriate to the matter before this court. He said:
"We find no substantial merit in the claim that this law wrongfully infringes upon the individual's constitutional rights under any of the provisions specified. Under the State's police powers, the common good takes precedence over private rights. One's home may be destroyed to prevent a conflagration. One's freedom of locomotion may be impeded to prevent the spread of a contagious disease. Our basic freedoms may be curtailed if sufficient reason exists therefor. Only in a very limited sense is a person free to do as he pleases in our modern American society. Regulation by the government is the price we pay for living in an organized community. From the day we are born, when a birth certificate must be filed, until the day we die, when official certification thereof must be recorded, we spend the intervening years obtaining licenses to marry, to drive a motor vehicle, to sell alcoholic beverages, to operate a barbershop, to practice the learned professions and to do countless other things, including the obtaining of a license to hunt and fish. These burdens we assume for the good that flows therefrom. We find no basic difference in *301 a requirement to obtain a gun purchaser's identification card." Burton v. Sills, supra. (Emphasis supplied)
This court finds no basic difference in applying the philosophy and reasoning in the case just cited to a requirement that a prior convicted criminal register in the Borough of Belmar when he is a resident or remains in the Borough for a period of 24 hours, as required. What is a reasonable period of residency prior to registration? It would seem to be a question which would depend upon the surrounding requirements of a particular municipality and can very well vary by reason thereof. However, in this type of municipality, a resort community such as Belmar, and for the reasons hereinbefore mentioned, a residency requirement of 24 hours as determined by the local officials would not appear to be unreasonable and should not be disturbed as being unreasonable by this court. It should be mentioned, that this expression of the court's opinion, does not constitute an opinion with respect to the residency requirements of similar ordinances which have been adopted in municipalities throughout Monmouth County (in which some are less than 24 hours and some are greater than 24 hours) as this court is now called upon to construe only the provisions of the Belmar ordinance and its particular application to this defendant.
The need for effective crime control and prevention outweighs the infringement upon the rights of the few, and is not an unreasonable exercise of the police power.
Another constitutional argument urged by the defendant is that the criminal registration ordinance interferes with the individual's right to travel. The individual's right of freedom of movement is one aspect of his more general right of privacy. That right of movement does not and, in the nature of things, cannot confer upon a traveler the right of untrammeled movement on a public highway. Considering the highly mobile nature of our society, such a right cannot be unlimited. Balancing the interest of the state as represented by the individual municipality in requiring *302 prior convicted criminals to inform the municipality of their whereabouts against the minor inconvenience which may be caused to such person and the fleeting and minimal intrusion on his privacy, it cannot be said that the regulation represents an unreasonable infringement upon or erosion of his right of privacy. State v. Kabayama, supra at page 88.
Passing now to another of defendant's contentions which is that the provisions of the ordinance in effect constitutes a violation of his rights as being an ex post facto law or bill of attainder. The ordinance cannot be considered to be bill of attainder because the individual has not been condemned. The burden imposed upon one who must register under the terms of the ordinance is not a substantial one, nor is it a violation of the due process clause. As to the ex post facto argument, the ordinance does not provide a punishment upon the individual resident who falls within the classification to wit: those previously convicted of crime, but merely provides for a small burden which has to be weighed against the benefit to the municipality as a whole. The ordinance can be compared with the provisions of the Habitual Offender Act, N.J.S. 2A:85-12, and Uniform Narcotic Drug Law, N.J.S. 24:18-1 et seq. in that some additional penalty or burden is placed upon a criminal after the original offense. These have been held not to be ex post facto laws, see Application of Caruso, 10 N.J. 184 (1952), and do not create a substantive crime. See State v. Washington, 47 N.J. 244 (1966); State v. Tyler, 88 N.J. Super. 396, 404 (App. Div. 1965) certiorari denied 384 U.S. 992, 86 S.Ct. 1898, 16 L.Ed.2d 1008 (1966).
The defendant makes a strong argument that this ordinance is pre-empted by state law on one of two grounds; (1) the subject matter of the ordinance in question is inherently in conflict with existing state law; and (2) the subject matter of the ordinance while not actually and clearly in conflict with existing state law is a matter which is inherently in need of uniform treatment on a state-wide rather than a local level and as such does not permit local *303 legislation. It is urged that the varying provisions in the ordinances now adopted by the several municipalities in the County, clearly indicates this. The case of Abbott v. City of Los Angeles, 53 Cal.2d 674, 3 Cal. Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385 (Sup. Ct. 1960) is cited as authority for this pre-emption argument. In Abbott, one of the only two cases dealing with criminal registration ordinances, (the other case is Lambert v. People of State of California, 355 U.S. 225, 78 S.Ct. 240, 2 L Ed.2d 228 (1957).[3] the Supreme Court of California held that the ordinance was beyond the constitutional power of the city in that it attempted to legislate in a field already pre-empted by the State. California, however, has specific legislation dealing with the prosecution of crime and the apprehension of criminals, with the punishment of habitual criminals as defined by state law, with distinct treatment aimed at the prevention and detection of certain enumerated crimes apt to be recidivistic and with registration required only of sex offenders. New Jersey, on the other hand, has no specific registration laws for sex offenders nor any other criminal except of course under the parole and probation systems and also, N.J.S. 2A:169A-1 through 10 providing for registration of narcotic offenders. The court in Abbott, supra, found that even though the state legislature had not specifically declared itself to have entered the field in so many words, the legislative intent is found in a multiplicity of statutes rather than a single enactment. No such general legislative intent is apparent in New Jersey, as our courts have held that a municipality may legislate on a local level where such is not subject to state statute, in conflict with it, or the state has not acted pursuant to powers granted to it. Mogolefsky v. Schoem, supra at page 598. Where there is nothing incompatible *304 in the particular state law and local ordinances and also no pertinent state enactment suggesting a legislative intent to pre-empt the field entirely, the ordinance will be upheld. Belleville Chamber of Commerce v. Town of Belleville, 51 N.J. 153 (1968). In Mogolefsky, supra, our New Jersey Supreme Court upheld the main part of an ordinance of the City of Clifton requiring real estate salesmen to obtain a local permit prior to soliciting sales listings. Most of the ordinance was declared valid even though the N.J.S.A. 45:15-1 et seq., provides for the licensing of all real estate brokers and salesmen at the state level. Justice Hall found that the ordinance had several legitimate purposes including affording the police a ready means of identification to salesmen in the solicitation area. The court decided as to those aspects of the ordinance which were not specifically covered by state, that the ordinance was valid. Thus mere entry into the field generally by the state does not preclude all local regulation.
It is fundamental that in the exercise of a delegated power, a municipality may not legislate in conflict with state statute. Kennedy v. City of Newark, 29 N.J. 178 (1959); Hertz Washmobile System v. Village of South Orange, 41 N.J. Super. 110, 123 (Law Div. 1956), affirmed 25 N.J. 207 (1957). There is nothing in the State statutes which clearly evidences a legislative intent to preclude all local regulation over the registration of those defined in the ordinance presently under consideration. In this regard the court is particularly mindful of the language employed in Art. IV, § VII, par. 11 of our State Constitution dealing with the liberal construction to be given to constitutional and statutory provisions concerning municipal corporations and the powers of municipal corporations. The court is also mindful of the case of Kennedy v. City of Newark, supra, where Chief Justice Weintraub stated, among other things, that before it can be said that the police powers delegated to local government must remain inert, it must be clear that the Legislature intended to occupy the field or *305 declared a policy contrary to a decision made by the local government. The delegated power may not be restrained upon the basis of speculation or dubious inference. The Constitution enjoys a liberal construction of legislation in favor of local authority. This principle, when taken with the strong presumption of the validity of the ordinance, requires that this court find that the ordinance in question is not pre-empted by the various components which make up the body of State penal law. There has been no clear showing made to this court that the intent of the Legislature is to occupy the field of crime prevention and investigation exclusively. On the contrary, there are certain areas including Disorderly Persons violations, licensing, and liquor and entertainment control. See State v. Greco, 86 N.J. Super. 551 (Cty. Ct. 1965); City of Newark v. Humphres, 94 N.J. Super. 384 (Cty. Ct. 1967) in which the municipalities have generally retained the power to regulate, even though the state has entered the field to some extent. This being the situation, it would appear however that those portions of the Belmar ordinance in question requiring the registration of narcotic offenders are invalid as the State has pre-empted the field. This determination in no way affects the legality of the ordinance as it pertains to the present defendant, he having been convicted of a crime other than a narcotic violation.
The court therefore concludes for the reasons hereinabove stated that the ordinance in question as it pertains to the present defendant is valid. The court further concludes and determines that in accordance with the stipulations made herein stipulating that the defendant has violated the ordinance, that the defendant is hereby found guilty of failing to register under the requirements of the ordinance, and will impose a penalty after opportunity has been given to the defendant to be heard concerning the same.
NOTES
[1] The pertinent portions of the Belmar Ordinance in question are as follows:

"3-1 Registration of Persons Convicted of Crime.
3-1.1 Registration. Every person who has been convicted of crime as defined in this section, if:
a. He be a resident of the Borough of Belmar and has not previously registered or
b. He shall have entered the Borough of Belmar and remained therein for more than 24 hours, or
c. He shall move to a new address within the borough, shall, within 24 hours after his arrival within the borough, furnish to the chief of police a written statement signed by him and validated by his oath or affirmation, giving the information required by this section
3-1.2 Information. The chief of police shall register all persons who have been convicted of crime within the meaning of this section and may require of such persons the following information.
a. True name and all aliases.
b. Full and complete physical description.
c. The kind, character and nature of each crime of which he has been convicted.
d. The place where each such crime was committed and the place of conviction of the same.
e. The name under which he was convicted in each instance and the date thereof.
f. The name and location of each place of confinement and the dates and duration of such confinement.
g. The location and address of his residence living quarters, stopping place or places, place or places of abode, together with a description of such residence, quarters or place, whether it be a hotel, rooming house, apartment or private dwelling, and a statement as to whether or not such residence or place is a temporary or permanent place of abode.
h. Length of time he has occupied each such residence or place and the length of time he expects or intends to remain in the borough.
i. At the time of furnishing the above information the registrant may be photographed or fingerprinted, or both, by the chief of police and said photographs and/or fingerprints may be made a part of the permanent record herein provided for.
3-1.3 Definition of Persons Convicted of Crime. For the purpose of this section, a person convicted of crime shall mean a person who has been convicted of a misdemeanor or high misdemeanor under the laws of the State of New Jersey or of a felony under the laws of any of the several states or of the United States, or who has violated any national or state law relating to the possession, sale or transportation of any narcotic.
This section shall not apply with respect to any of the abovenamed convictions or violations which have occurred more than ten years ago or with respect to any crime for which there has been a full executive pardon.
3-1.4 Record of Registrations. The statements herein required shall at all times be kept by the chief of police in a file or files separate and apart from other files and records maintained and kept by the police department and shall not be open to inspection by the public or by any person other than the municipal governing body and members of the police department of the Borough of Belmar; provided, however, that the chief of police shall have the authority to transmit copies of records required herein to the sheriff of any county of the State, or the head of any organized police department of any municipality in the State, or the head of any state or federal law enforcement agency, upon written request and statement that such records are deemed necessary for crime investigation purposes and shall be used only for those purposes.
3-1.5 Registration Card. Every person who registers under this section shall be furnished an identification card by the chief of police. Said card shall contain a photograph of the registrant, his registry number, the date of registration and the date or length of his proposed stay in the borough. Every registrant shall carry such identification card on his person at all times while in the borough.
3-1.6 Violations. Every person who fails to register as required by this section, or who fails to carry his identification card on his person, or who supplies false, untrue or misleading information in connection with registering under this section, or who aids, assists or abets in the violation of any provision of this section, shall be guilty of a violation of this section."
[2] In 1965, there were no registrations (1965 being the year the original ordinance was adopted); in 1966 there were four registrations and in 1967 there were four registrations.
[3] The Supreme Court decided this case on the narrow ground that the defendant had insufficient notice of his obligation to register and therefore his conviction was set aside. The problem of notice is not involved in the case before me as it has been stipulated that the defendant had notice of the provisions of the Belmar ordinance.