219 N.J. Super. 490 (1987)
530 A.2d 828
TRINITY BAPTIST CHURCH OF HACKENSACK, A RELIGIOUS ORGANIZATION OF THE STATE OF NEW JERSEY, AND MARY ATKINS AND OSCAR OGLETREE, PLAINTIFFS-APPELLANTS,
v.
LOUIS SCOTT HOLDING COMPANY, A NEW JERSEY CORPORATION, LOUIS CINQUE, JOSEPH CINQUE, ZONING BOARD OF ADJUSTMENT OF THE CITY OF HACKENSACK, AND MAYOR & COUNCIL OF THE CITY OF HACKENSACK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 28, 1987.
Decided August 5, 1987.
*492 Before MICHELS, O'BRIEN and MacKENZIE, JJ.
Parsekian & Solomon, attorneys for appellant (Ned J. Parsekian, on the brief).
Chase & Chase, attorneys for respondents Louis Scott Holding Company, Louis Cinque, and Joseph Cinque (Bruce Evan Chase, on the brief).
*493 George B. Wolfe, attorney for respondent Zoning Board of Adjustment of the City of Hackensack.
The opinion of the court was delivered by O'BRIEN, J.A.D.
In this zoning case, plaintiff objectors appeal from a judgment of the Law Division affirming a decision by defendant Zoning Board of Adjustment of the City of Hackensack (Board), granting certain variances. We reverse.
Defendant Louis Scott Holding Co. (Scott) owns a lot in the City of Hackensack with a frontage of 75 feet and a depth of 150 feet. The lot is located in the R-3B district on the zoning map. The permitted uses in this district are one-family, two-family and multi-family dwellings. However, for multi-family dwellings (over two stories) there is a minimum lot size requirement of 20,000 square feet, a frontage requirement of 100 feet, a side-yard requirement of 15 feet, a required number of off-street parking spaces, and a minimum lot area per dwelling unit of 725 square feet.
An application was filed by Louis Cinque (applicant) to erect a five-story building on the property. It was represented that the first floor would be used for parking, the second, third and fourth floors would each contain four condominium units (units) and the fifth floor would contain three units or a total of 15 dwelling units. The building inspector denied the application since it required four variances from the requirements of the zoning ordinance: (1) the lot contained only 11,250 square feet instead of the required 20,000 square feet; (2) the lot has a frontage of 75 feet instead of the required 100 feet; (3) the left side yard proposed would be 10 feet instead of the required 15 feet, and (4) 24 off-street parking spaces would be provided instead of the required 25.
At an adjourned hearing on September 18, 1985, Joseph Cinque (also referred to as applicant) presented the application. He described his application as follows:

*494 I would like to have permission to erect a five-story building  actually, it's a four-story building with parking underneath the building. This is for condominiums, 16 units having a total square footage of about 700 square feet for each unit.
Several residents appeared in opposition. The Board granted the requested four variances by a vote of four to three. Notwithstanding that the plans submitted with the initial application indicated that there would be a total of 15 units, the resolution of the Board states that "the applicant proposes 16 one-bedroom, 700 square foot condominium units."[1]
Plaintiff objectors filed a complaint in lieu of prerogative writ against Scott, Joseph Cinque, Louis Cinque, the Board, and the Mayor and Council of the City of Hackensack.[2] After a hearing, the trial judge affirmed the decision of the Board by order of November 17, 1986, from which this appeal is taken.
Appellants contend that the applicant did not prove undue hardship, nor did the applicant satisfy the negative criteria. In addition, although not alleged in their complaint but argued before the Law Division, appellant points out that the resolution of the Board of Adjustment actually granted a variance from the required 725 square feet of lot area per dwelling unit, although no application was made for that variance. In response to this contention before the Law Division, the Board's attorney explained the unique system used in the City of Hackensack in handling planning and zoning board applications. He explained that the applications are preliminarily reviewed by "city hall and the administration." He said:
They, the city hall, not the zoning board members or the zoning board attorney, establish what zoning board variances shall be requested based on what deficiencies they review in the site plan, the preliminary site plan.
*495 He explained that this occurs at an unofficial review meeting[3] in which the applicant is told which variances he needs when he makes his application. The board of adjustment then votes on those variances. He then explained:
It [the board of adjustment] does not address the issue of site plan approval and that's where the City of Hackensack differs from a number of other communities.
That issue follow, and formal site plan approval is then granted by the city hall, and the administration and the chief zoning officer. Now, that's a little bit of a different approach to this business than most of the municipalities that I ever appeared before. But that's been the procedure in Hackensack before I got there and that's still the procedure.
In affirming the decision of the Board, the trial judge did not address the question of the need for a variance from the required 725 square feet of lot area per dwelling unit. He said:
I don't think that that's really before me. It was raised.
But they went before the board of adjustment. The board of adjustment took care of the issues presented to it. All I could do is sustain that or deny that. I can't handle something that wasn't raised even before the board of adjustment.
I recall very distinctly that particular point.
While this is not part of my decision, it may be some area for some action. I don't know. But at least I think the only power that I have is to determine the validity of what the board of adjustment did or did not do.
We disagree with the trial judge. The resolution of the Board approved the construction of a building containing 16 one-bedroom condominium units. Sixteen units on a lot of 11,250 square feet equates to 703 square feet of lot area per dwelling unit. This violates the ordinance requirement of 725 square feet per dwelling unit.
For the first time on this appeal, the applicant's substitute counsel argues:
With respect to plaintiffs' allegation that the proposed structure of sixteen (16) units violate the requirement of 725 square feet of lot area per dwelling, it is respectfully submitted that this issue was not properly raised by plaintiffs before the court. However, the court should take note of the fact that the lot in question, consisting of 11,250 square feet permits the construction of sixteen *496 (16) units, assuming other requirements of the zoning ordinances are met. The code, as practically applied, computes the permissible number by simply dividing the available square footage by 725. The result of this computation, if greater than .49, is rounded to the next greater whole number. In this matter, the result of the computation is 15.51, which, as the code is administered by the City of Hackensack's Department of Community Affairs, is rounded off to 16. Therefore, no additional variance was required for the project proposed by defendants.
No authority is given for this "practical" application of the requirements of the ordinance. The obvious result is to create 16 units which do not comply with the minimum lot area per dwelling unit without the benefit of any variance. The zoning data submitted with the application and reproduced in appellants' appendix[4] reflects that the original application was for 15 rather than 16 units. Neither the applicant nor the Board has disputed the accuracy of this exhibit. There is nothing to indicate that the application was amended to seek 16 rather than 15 dwelling units, yet it was presented to and approved by the Board in that fashion.
This circumstance presents other problems. One of the variances sought by the applicant and ruled upon by the Board, was for 24 off-street parking spaces, rather than "the required 25." The contention that 25 parking spaces were required was based upon a total of 15 units, i.e., 15 x 1.5 + 10% = 24.75. However, for 16 units, the required parking spaces would be 26.4, i.e., 16 x 1.5 + 10%. Thus, the variance for off-street parking was insufficient for 16 units.
More importantly, a variance from the minimum lot area per dwelling unit requirement results in an increase in the permitted density which is defined in N.J.S.A. 40:55D-4 as "the permitted number of dwelling units per gross area of land to be developed." A variance to allow such a departure is required to be made under N.J.S.A. 40:55D-70d which provides in pertinent part:
The board of adjustment shall have the power to:

*497 d. In particular cases and for special reasons, grant a variance to allow departure from regulations pursuant to article 8 of this act to permit: ... (5) an increase in the permitted density as defined in section 3.1 of P.L. 1975, c. 291 (C. 40:55D-4). .. . A variance under this subsection shall be granted only by affirmative vote of at least five members, in the case of a municipal board, ...
As noted, no application was made for variances to create 16 units with less than the minimum lot area required per dwelling unit and the variances for which application was made were granted by a vote of four to three. The Board considered the application for those variances under N.J.S.A. 40:55D-70c, which specifically provides: "no variance from those departures enumerated in subsection d of this section shall be granted under this subsection." Clearly, if application had been made for variances from the minimum lot area per dwelling unit requirement, it would have had to be considered under subsection d and approved by at least five affirmative votes. Furthermore, we note that N.J.S.A. 40:55D-70c is applicable only if:
... the proposed development does not require approval by the planning board of a subdivision, site plan or conditional use, in conjunction with which the planning board has power to review a request for a variance pursuant to subsection 47a of this act.
In its brief, the Board states:
The board of adjustment made a decision on all issues that were before it. If the applicant starts construction, site plan approval will be necessary for the City of Hackensack.
From this comment we assume that the city has an ordinance which requires site plan approval. It is not clear whether such site plan approval is required to be made by resolution of the planning board as provided in N.J.S.A. 40:55D-37a.[5] If the ordinance requires site plan approval by resolution of the planning board as a condition for the issuance of a permit pursuant to N.J.S.A. 40:55D-37a, the planning board would have the power to grant any variances required pursuant to N.J.S.A. 40:55D-70c, but not a variance pursuant to N.J.S.A. *498 40:55D-70d. See N.J.S.A. 40:55D-60. On the other hand, if a variance is sought for a departure from the required density under N.J.S.A. 40:55D-70d(5), only the board of adjustment can grant such a variance and only by a minimum of five affirmative votes. The board of adjustment would then have the power to grant the required site plan approval pursuant to N.J.S.A. 40:55D-76b.
As noted, the trial judge did not address the circumstances presented by the resolution approving 16 units, since no application for a variance from the minimum lot area per dwelling unit was made to, nor considered by, the Board. He limited his review to the variances which were granted by the Board and found there was a reasonable basis for the Board's granting of those variances. We disagree with that conclusion.
When reviewing the actions of a zoning board of adjustment, the court gives deference to the municipality's broad discretion and reverses only if it finds the municipal action to be arbitrary, capricious or unreasonable. See Charlie Brown of Chatham v. Bd. of Adjustment, 202 N.J. Super. 312, 321 (App.Div. 1985). As noted, the board granted the variances pursuant to N.J.S.A. 40:55D-70c, which provides in pertinent part:
(1) Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to article 8 of this act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship; (2) where in an application or appeal relating to a specific piece of property the purposes of this act would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment, grant a variance to allow departure from regulations pursuant to article 8 of this act....
* * * * * * * *

*499 d. * * *
No variance or other relief may be granted under the terms of this section unless such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance.
To receive a variance under N.J.S.A. 40:55D-70c(1), applicants must satisfy two criteria: (1) that they will suffer exceptional or undue hardship if the variance is not granted  the so-called positive criteria, and (2) that the variance will not result in a substantial detriment to the public good or the zoning plan  the so-called negative criteria. Nash v. Bd. of Adjustment of Morris Tp., 96 N.J. 97, 102 (1984). Undue hardship involves the underlying notion that no effective use can be made of the property in the event the variance is denied. Commons v. Westwood Zoning Bd. of Adjustment, 81 N.J. 597, 605 (1980). Although the use of the property proposed by applicant is a permitted use under the zoning ordinance, such use is subject to regulation as to minimum lot size, frontage, side yards and minimum lot area per dwelling unit, as well as a minimum number of off-street parking spaces. Use of property may, of course, be subject to reasonable restraint. Ibid. As Justice Pashman observed in Taxpayers Assn. of Weymouth Tp., Inc. v. Weymouth Tp., 80 N.J. 6, 20 (1976), cert. den. 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977): "[Z]oning is inherently an exercise of the State's police power" and the property owner's use of the land is subject to regulation "which will promote the public health, safety, morals and general welfare...." N.J.S.A. 40:55D-2(a). Put another way, an owner "is not entitled to have his property zoned for its most profitable use." Bow & Arrow Manor v. West Orange, 63 N.J. 335, 350 (1973). Surely, the property under consideration in this case could be used for a one or two-family dwelling without requiring any variances. It also could be used for a multi-family dwelling of two stories or less which would only require a variance of 3,850 square feet, since such a structure requires 15,000 square feet rather than the 20,000 square feet required for a multi-family dwelling over two stories. Given the alternatives available to the owner *500 of this property, we conclude that the applicant failed to establish the requisite hardship to entitle him to a variance pursuant to N.J.S.A. 40:55D-70c(1).
Although not specifically stated, the findings of fact and conclusions of law made by the Board suggest that the variances were granted pursuant to N.J.S.A. 40:55D-70c(2), the so-called "flexible c."[6] We recognize that the intent of the Legislature in adopting N.J.S.A. 40:55D-70c(2) was to broaden the c variance by adding alternative criteria. See Introductory Statement, Assembly No. 1169  L. 1984, c. 20. Yet, the Board did not make a finding that the purposes of the Municipal Land Use Law would be advanced by a deviation from the zoning ordinance requirements and that the benefits of the deviations would substantially outweigh any detriment as is the predicate for the grant of such variances.[7]
The objectors raised significant questions concerning the use of this small piece of property for the erection of a five-story structure to house 16 dwelling units. While the Board noted these objections, it totally failed to address them in the context of finding that the purposes of the Municipal Land Use Law would be advanced by granting the requested variances and that the benefits of the variances would substantially outweigh these detriments. In failing to do so, we conclude the Board acted unreasonably, arbitrarily and capriciously and its decision should have been reversed by the Law Division.
*501 Although we note the absence of any evidence to support the conclusion of the Board that the negative criteria had been met, we find it unnecessary to address that issue in light of our determination. Although it is unnecessary for us to address any of appellants' other arguments, since a new application may be made, we observe that if Joseph and Louis Cinque were contract purchasers of the premises from Scott as reflected in the contract dated June 3, 1985, they became a "developer" as defined in N.J.S.A. 40:55D-4, which provides:
`Developer' means the legal or beneficial owner or owners of a lot or of any land proposed to be included in a proposed development, including the holder of an option or contract to purchase, or other person having an enforceable proprietary interest in such land.
Therefore, the applicant had a sufficient interest in the property to entitle him to apply for variances.
Reversed.
NOTES
[1] The contract of sale between Louis Scott Holding Co. and Joseph and Louis Cinque is conditioned upon approval of variances in order to construct a 16-unit residential condominium building.
[2] The case was voluntarily dismissed as to the Mayor and Council of the City of Hackensack who agreed to be bound by the decision of the court.
[3] Appellants contend that this procedure violates the Open Public Meetings Act, N.J.S.A. 10:4-6, et seq. In view of our decision in this case, it is unnecessary for us to address this contention.
[4] See appellants' appendix at Pa 102.
[5] The board of adjustment would have the power, under N.J.S.A. 40:55D-76b, to grant such site plan approval whenever the proposed development requires approval by the board of adjustment of a variance pursuant to subsection d of N.J.S.A. 40:55D-70.
[6] In the Board's resolution, reference is made to the applicant's testimony "that housing is in critical shortage in this and every area of the City of Hackensack and that the project would be beneficial to the area and within the price range of most young people."
[7] As noted by an author in discussing the new "flexible c" variance:

Additionally, under the `flexible c,' a variance cannot be granted unless the benefits from the grant would substantially outweigh any detriment. This requirement limits the applicability of the device to applications where there would be limited or no detriment, or substantially greater benefits. [114 N.J.L.J. 569.]