246 N.J. Super. 362 (1990)
587 A.2d 674
DILLER AND FISHER COMPANY, INCORPORATED, A CORPORATION OF THE STATE OF NEW JERSEY, DILLER AND FISHER COMPANY, INCORPORATED T/A PRUDENTIAL DILLER AND FISHER, REALTORS, DILLER AND FISHER OFFICE CONDOMINIUM ASSOCIATION, AN UNINCORPORATED ASSOCIATION, AND WILLIAM J. DILLER, JR., PLAINTIFFS,
v.
ARCHITECTURAL REVIEW BOARD OF THE BOROUGH OF STONE HARBOR AND MAYOR AND COUNCIL OF THE BOROUGH OF STONE HARBOR, DEFENDANTS.
Superior Court of New Jersey, Law Division Cape May County.
November 9, 1990.
*364 Vincent L. Lamanna, Jr., for plaintiffs.
W.M. Balliette, Jr., for defendants (Cafiero & Balliette and Balliette, attorneys).
CALLINAN, J.S.C.
Plaintiffs bring this motion for summary judgment seeking a determination that sections XX and 15-13.6 of the Stone Harbor Revised General Ordinances empowering the Architectural Review Board of the Borough of Stone Harbor are violative of the Municipal Land Use Law (hereinafter referred to as "MLUL"). The holding here is that the ordinances are invalid.
Plaintiffs are the individual owner and the corporate entities that occupy the commercial premises located in a commercial *365 condominium complex at 9614 Third Avenue, Stone Harbor, New Jersey. The matter arises out of plaintiffs' attempt to change the wording on a sign displayed on the front of plaintiffs' commercial premises. In attempting to seek permission to apply a one-quarter-inch plywood facing containing changed logo and advertising language to the existing sign-board, plaintiffs were directed to apply to the architectural review board pursuant to the ordinances of the Borough of Stone Harbor.
Ordinance 15-13.6(b)8 states:
All proposed signs and billboards, 1 square foot or larger, except for sale signs, rent signs and general contractor's signs permitted during construction, shall be submitted for review and final approval by the Architectural Review Board of the Borough prior to their use. Signs listing hours, names, directions, information, regulations, etc., may be approved following review by the Architectural Review Board. Signs less than one square foot need not be submitted for approval. However, the Board shall have the right to review these at the Board's discretion.
Plaintiffs, accordingly, applied for, and were denied, permission to change the sign. This decision was appealed to defendant Borough of Stone Harbor's governing body which affirmed defendant architectural review board's decision. This appeal follows.
The precept has long been established that courts delicately exercise their powers to declare a statute unconstitutional. Harvey v. Board of Chosen Freeholders of Essex County, 30 N.J. 381, 153 A.2d 10 (1959). That natural reluctance also applies when the exercise is to review a municipal ordinance's validity.
A municipal ordinance should be cloaked with a strong presumption of constitutionality. State v. Ulesky, 100 N.J. Super. 287, 301, 241 A.2d 671 (Cty.Ct. 1968), rev'd on other grounds 54 N.J. 26, 252 A.2d 720 (1969). That presumption is especially strong at the trial level. Id. 100 N.J. Super. at 295, 241 A.2d 671. As stated in Ulesky:
Therefore, in order for this court to determine the ordinance under consideration to be invalid, it must be shown to be unconstitutional or an abuse of the *366 power of the municipality beyond a reasonable doubt.... [Id. at 296, 241 A.2d 671.]
The court in Sea Isle City v. Caterina, 123 N.J. Super. 422, 303 A.2d 351 (Cty.Ct. 1973) further discusses the burden of proving the constitutionality or unconstitutionality of a municipal ordinance. The court in that case stated:
This court's determination of the constitutionality or unconstitutionality of any municipal ordinance must be guided by certain principles governing the burden of proof to establish unconstitutionality. The first principle is that a municipal ordinance will be presumed to be reasonable in the absence of clear proof to the contrary. [Citation omitted] Furthermore, the ordinance is cloaked with a strong presumption of constitutionality, and it should not be declared void by a County Court or any other court of limited jurisdiction unless its repugnancy to the Constitution is clear beyond a reasonable doubt. [Citation omitted] That is, where there are two possible interpretations, that which will uphold the ordinance is to be adopted in preference to one under which the ordinance would be unconstitutional. [Citation omitted] In fact, the cardinal principle of statutory construction must be to save and not to destroy, and the duty of the court is to strain if necessary to save an act or ordinance, not to nullify it. [123 N.J. Super. at 428, 303 A.2d 351; citation omitted]
The commendable purposes for which Stone Harbor created the architectural review board are set forth in paragraph 20-1 of chapter XX:
The governing body finds that excessive uniformity, dissimilarity, inappropriateness or poor quality of design in the exterior appearance of buildings adversely affects the desirability and appearance of the business and light industry districts, and by so doing impairs the benefits of occupancy of existing property in these areas, impairs the stability and value of both improved and unimproved real property in such areas produces degeneration of property in such areas with attended deterioration of conditions affecting the health, safety, welfare and morals of the inhabitants thereof, and destroys a proper relationship between the taxable value of real property in such areas and the cost of municipal services provided therefore.
The ordinance contemplates that the architectural review board would "review all applications for construction permits which will affect the exterior of existing structures or structures to be constructed within the business and light industry districts." See § 20-2.
So it is that anyone "who intends to decorate the exterior of a building or structure located within the business and light industry districts ... shall be required to obtain permission *367 therefore from the Board of Architectural Review prior to the commencement of such work."
More pertinent to this case, § 20-5 of the ordinance provides that "every application ... for a building permit ... or for a sign to be constructed or installed in such business and light industry districts, shall be referred by the construction official to the Board of Architectural Review within three working days of the date of the receipt of the application." Emphasis supplied.
Section 20-8 bestows upon the architectural review board "the authority to examine, review, approve or disapprove, because of location, quality and appropriateness of design, applications for permits for signs in the business and light industry districts."

Section XX is an Improper Arrogation of Authority Properly Vested in the Stone Harbor Zoning Board.
A municipality receives its power directly through the State by virtue of statutory grants of authority. See Riggs v. Long Beach Tp., 109 N.J. 601, 610, 538 A.2d 808 (1988). In the field of zoning and planning, those powers are contained in that body of law known as the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq. (hereinafter referred to as "MLUL").
In a municipality, only municipal planning boards and zoning boards of adjustment are vested with power to rule on zoning and planning matters. See N.J.S.A. 40:55D-23 et seq. and -69 et seq. These statutory powers may not be adulterated or interfered with by acts of local governing bodies or officials. See Swimming River Golf & Country Club v. New Shrewsbury, 30 N.J. 132, 136-137, 152 A.2d 135 (1959); Smith v. Paquin, 77 N.J. Super. 138, 185 A.2d 673 (App.Div. 1962); Trinity Baptist v. Louis Scott Hold., 219 N.J. Super. 490, 530 A.2d 828 (App.Div. 1987). Cf. Parisi v. North Bergen Mun. Port. Authority, 105 N.J. 25, 519 A.2d 327 (1987). There are some minor exceptions to this rule, but such exceptions are statutory. *368 See N.J.S.A. 40:55D-109 (Historic Preservation Commissions) and N.J.S.A. 40:56A-1 et seq. (Environmental Commissions).
Plaintiffs argue that the creation of an architectural review board, such as that established by the Borough of Stone Harbor, and vesting it with the powers enunciated in the ordinance is outside the ambit of the statutory authority conferred upon municipalities pursuant to the MLUL. Plaintiffs cite Piscitelli v. Scotch Plains Tp., 103 N.J. Super. 589, 248 A.2d 274 (Law Div. 1968) and Neuberger Estate v. Middletown Tp., 215 N.J. Super. 375, 521 A.2d 1336 (App.Div. 1987) in support of this conclusion.
Piscitelli involved a case where the Township of Scotch Plains established an architectural review board and required that all applicants for building permits or signs submit plans to the board for approval. There the trial court disposed of the matter by granting summary judgment in favor of plaintiff holding:
Matters committed to the board of adjustment by statute and the exercise of its powers, may not in any way be circumscribed, altered or extended by the municipal governing body.... [103 N.J. Super. at 596, 248 A.2d 274.]
The court further noted that:
[D]efendants, by the ordinance in question, seek to aesthetically control construction in the municipality independently of the zoning law. The ordinance in effect imposes an additional condition precedent to the issuance of a permit. By that is meant that if a proposed use conforms to the zoning code, the additional burden is placed that it must conform to surroundings aesthetically. In effect, the ordinance places aesthetic value first and creates an unjustifiable condition precedent to the issuance of a certificate. [Id. at 597, 248 A.2d 274.]
The Neuberger case involved Middletown Township's establishment of a landmark commission to review buildings and structures to determine if they should be designated as historic. Neuberger basically held that such a delegation of authority was an indirect means of exercising planning and zoning powers and that these powers must be exercised in keeping with the principles of the enabling statute. See Neuberger, supra, 215 N.J. Super. at 384, 521 A.2d 1336.
*369 Subsequent to the facts that gave rise to the decision in Neuberger, the Legislature removed any doubt as to the delegation of a standing committee of historic site and district designation powers by enacting the L. 1985 c. 516 amendments to the MLUL which are now contained in N.J.S.A. 40:55D-2 j., -4, and more specifically in N.J.S.A. 40:55D-28(b). Thus, it is that historic districts receive special consideration for aesthetics and site preservation. No such provisions have been made with regard to architectural review boards. Absent statutory authority, § XX may not stand.

If the Zoning Board Were so Inclined it Could Not Delegate the Powers Conferred Upon the Architectural Review Board by § XX, Absent Specific Authority.
The Stone Harbor ordinance sets forth criteria regarding the contents and substance of the sign which plaintiffs argue are so vague as to permit the imposition of subjective standards. For example, the guidelines state that:
Signs that demand public attention rather than invite attention should be discouraged. Color should be selected to harmonize with the overall building color scheme to create a mood and reinforce symbolically the sign's primary communication message.... Care must be taken not to introduce too many colors into a sign. A restricted use of color will maintain a communication function of the sign and create a visually pleasing element as an integral part of the texture of the street. [Emphasis supplied]
The time-honored animus of the law is that zoning power may not be exercised for purely aesthetic considerations. Passaic v. Patterson Bill Posting, etc., Co., 72 N.J.L. 285, 62 A. 267 (E. & A. 1905); Hendlin v. Fairmount Const. Co., 8 N.J. Super. 310, 72 A.2d 541 (Ch.Div. 1950). That precept has not been without its doubters. In lone dissent in United Advertising Corp. v. Metuchen, 42 N.J. 1, 198 A.2d 447 (1964), Justice Hall foresaw the burgeoning importance of aesthetics in zoning matters:
Much is said about zoning for aesthetics. If what is meant thereby is zoning for aesthetics as an end in itself, the issue may be said to be unexplored in our State, but if the question is whether aesthetics may play a part in a zoning judgment, the subject is hardly new. There are areas in which aesthetics and *370 economics coalesce, areas in which a discordant sight is as hard an economic fact as an annoying odor or sound. We refer not to some sensitive or exquisite preference but to concepts of congruity held so widely that they are inseparable from the enjoyment and hence the value of property. Even the basic separation of industrial from commercial from residential, although obviously related to so much of the quoted statute as speaks of health and hazard, rests also on the aesthetic impact of uses upon the value of properties. [Id. at 5, 198 A.2d 447.]
The most recent pronouncement by our Supreme Court came in Burbridge v. Mine Hill Tp., 117 N.J. 376, 568 A.2d 527 (1990), where it was stated:
Although the general purposes of the zoning law include aesthetics, it is an open question whether aesthetics alone  that is, a more attractive use of the premises or a use more in keeping with the principles of the zoned area  can form the basis of a special reason justifying a variance to expand a pre-existing nonconforming use. [Id. at 387, 568 A.2d 527.]
Although Burbridge involved the issue of whether a variance should be granted to expand a nonconforming use (junkyard), one of the special reasons advanced was the beautification of the front of the premises in order to create a more aesthetically pleasing appearance in the neighborhood, removing the bulk of the operation to the rear of the premises away from the view of passersby. There is language in Burbridge to suggest that aesthetics is a concept that is inextricably entwined with notions of the general welfare. Burbridge at 387-388, 568 A.2d 527.
The Court, however, carefully pointed out:
A note of caution, however, is in order. We note, as did the Court in Kohl v. Mayor of Fair Lawn, supra 50 N.J. 268 [234 A.2d 385], [(1967)] that aesthetic benefits alone will not always justify a substantial expansion of a pre-existing nonconforming use....
Our holding in the instant case does not conflict with the alternative holding in Pieretti [v. Mayor of Bloomfield, 35 N.J. 382, 173 A.2d 296 (1961)]. The proposed expansion in that case was much greater and the aesthetic benefits to be gained were much less than in Paschal's application....
Moreover, we emphasize that although concerns of appearance and compatibility have particular relevance in the context of variance applications to expand a pre-existing nonconforming use, they have less relevance compared to the other basic concerns of the MLUL when the question is whether to allow a new use that does not conform to the existing zoning ordinance. In respect of a variance to permit a `new' nonconforming use, ambience [sic] alone can seldom be a proper basis for special reasons. [117 N.J. at 391-392, 568 A.2d 527.]
*371 The present state of the laws is that aesthetics is certainly a legitimate aim of zoning, but it is one that must be accomplished within clearly defined limits. See Home Builders League of South Jersey, Inc. v. Berlin Tp., 81 N.J. 127, 145 n. 4, 405 A.2d 381 (1979); Westfield Motor Sales, Co. v. Westfield, 129 N.J. Super. 528, 535-539, 324 A.2d 113 (Law Div. 1974). Those limits are not met by § XX.
The law on that subject is clearly in a state of development. The past two decades have seen substantial activity among the zoning boards of this State and other states to upgrade zoning requirements to preserve the quality of life of their respective communities. Environmental concerns have given impetus to these efforts. Increasingly zoning laws have taken aesthetic aspects into consideration and court decisions around the country, evaluating these efforts, have not been consistent. Courts generally have been reluctant to consider aesthetics alone as sufficient reason for zoning boards to base their judgments. Their decisions have anchored aesthetics to other considerations such as concerns for property value, general welfare or justified aesthetic zoning regulations in terms of the lawful use of police power.
In James City Cty. Super. Bd. v. Rowe, 216 Va. 128, 216 S.E.2d 199 (1975), the county attempted to control development in the Colonial Williamsburg/Busch Gardens section by making developers submit all preliminary site plans to the "Architectural Design Review Board," a five-man body appointed by the board for two-year terms. Plaintiff developers challenged that procedure. Failing in their attack on the ordinance on the grounds that it constituted discriminatory zoning and was violative of due process, the landowners were left with the sole objection that the legislature did not specifically delegate authority to local government to impose restrictions on architectural design. Conversely, the board argued that the preservation of the commercial value of an area as a tourist attraction was within the police power of the local government.
*372 The Supreme Court of Virginia, noting that some jurisdictions have adopted the rule upholding architectural design regulations when the purpose of the ordinance was to protect property values within the zone, then stated:
We decline to follow this rule when, as here, it appears that the predominant purpose of the ordinance was to promote aesthetic values and the purpose recited in the ordinance to protect property values was merely an incidental goal. Finding nothing in the enabling statutes which delegates to the Board the power it claims, we hold that the Board was without authority to impose the architectural design restrictions incorporated in 8a.... [216 S.E.2d at 213; emphasis supplied]
Generally, decisions based on ambiance have not been upheld. In Connecticut, it was held improper for a municipality to regulate colors in a sign absent a specific enabling provision. Capalbo v. Greenwich Plan. & Zoning Bd., 208 Conn. 480, 547 A.2d 528 (1988).
Likewise, in Pennsylvania it was held that the fact that the zoning board believed a proposed building to be inartistic could not by itself be a basis of depriving a homeowner of the right to use his property as he wishes. Appeal of Medinger, 377 Pa. 217, 104 A.2d 118 (1954).
In National Land & Investment Co. v. Kohn, 419 Pa. 504, 215 A.2d 597 (1965), the court considered a township's ordinance which required a four-acre minimum lot area in order to construct residential housing. The court in that case said:
There is no doubt that many of the residents of this area are highly desirous of keeping it the way it is, preferring, quite naturally, to look out upon land in its natural state rather than on other homes. These desires, however, do not rise to the level of public welfare. This is purely a matter of private desire which zoning regulations may not be employed to effectuate. [215 A.2d at 611]
In West Virginia, regulations establishing building requirements which inhibited abutting owners from encroaching, based solely on aesthetic considerations were set aside. Fruth v. Charleston Affairs Bd., 75 W. Va. 456, 84 S.E. 105 (1915).
Significantly, the United States Supreme Court in Metromedia, Inc. v. San Diego, 453 U.S. 490, 497-498, 101 S.Ct. 2882, 2887-2888, 69 L.Ed.2d 800 (1981), declared that states and *373 municipalities may lawfully regulate sign colors in the interest of aesthetics.
In Maryland, a zoning ordinance prohibiting advertising signs in a business district was held not to be objectionable, even though based on aesthetic considerations. Montgomery Cty. v. Citizens, 20 Md. App. 484, 316 A.2d 322 (1974).
Other cases have upheld the right to have zoning ordinances based solely on aesthetic considerations as an exercise of police power in order to protect the general welfare. State v. Wieland, 269 Wis. 262, 69 N.W.2d 217 (1955); McGuire v. Purcell, 7 Ill. App.2d 407, 129 N.E.2d 598 (1955); John Donnelly & Sons, Inc. v. Outdoor Advert. Bd., 369 Mass. 206, 339 N.E.2d 709 (1975). The Donnelly case cited with approval Westfield Motor Sales Co. v. Westfield, 129 N.J. Super. 528, 324 A.2d 113 (Law Div. 1974):
In a recent decision by the New Jersey Superior Court, aesthetic zoning was upheld in a case involving a total prohibition of billboards of a certain size. Westfield Motor Sales Co. v. Westfield. The court suggested that `[l]ess confusion will result if the courts accept aesthetic zoning per se, instead of purporting to accept it and then dismissing it as inadequate.' [339 N.E.2d at 718; citations omitted]
Piscitelli, after outlining some aesthetic subjects as proper matters to be considered by zoning boards, stated:
However, these considerations must be prescribed in the ordinance and implemented by the board of adjustment. If landowners comply with building requirements and their property is not restricted by zoning ordinance, they have a continuing right to a building permit, not subject to discretionary powers of a board or commission not authorized by statute. Schack v. Trimble, 48 N.J. Super. 45, 50-51 [137 A.2d 22] (App.Div. 1957). [103 N.J. Super. at 598-599, 248 A.2d 274.]
The problem is not without difficulty. The question of aesthetics is both abstract and subjective. Attempts to quantify the concept and to establish standards will at best be irksome. One thing is clear, however, and that is, to the extent that zoning decisions are based upon aesthetics, these decisions are to be made by zoning and planning boards of this State pursuant to specific legislative authority and are not to be delegated absent said authority.

*374 If Zoning Ordinances have the Potential to Infringe upon Freedom of Speech Considerations, the Statutory Authority and Guidelines must be Especially Clear.

The vagueness of § XX criteria invites the mischievous results that routinely seem to occur whenever a subjective standard of review is sought to be applied to freedom of expression. Though not a free speech issue in the traditional sense, there can be little argument that, in this country, we hold dear the proposition that merchants must be permitted to conduct their businesses freely as long as they do so in an ethical and honest manner.
In Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), Justice Blackman writing for the majority wrote:
Advertising, like all public expression, may be subject to reasonable regulation that serves a legitimate public interest.... To the extent that commercial activity is subject to regulation, the relationship of speech to that activity may be one factor, among others, to be considered in weighing the First Amendment interest against the governmental interest alleged. Advertising is not thereby stripped of all First Amendment protection. The relationship of speech to the marketplace of products or of services does not make it valueless in the marketplace of ideas. [421 U.S. at 826, 95 S.Ct. at 2234-35.]
Government oversight of commercial expression can be expected to impose a chilling pall on the merchant and the marketplace. There is great wisdom in limiting these regulatory activities to those authorized by specific legislative edict. Courts should be especially quick to denounce attempts to regulate the content of advertising by governmental bodies whose authority to do so is not clearly mandated by law.

Neither Zoning Boards nor Governing Bodies may Invade, Obstruct or Interfere with the Discretionary Powers Vested in the Construction Code Official by the Municipal Land Use Law.
Plaintiffs further argue that § 20-7 of the ordinance, by mandating that the construction code official refuse to issue any building permit which has not been approved by the architectural *375 review board, is a direct intrusion upon, if not indeed an outright usurpation of, the discretionary powers of the construction code official contemplated by the MLUL.
In Lionel's Appliance Center, Inc. v. Citta, 156 N.J. Super. 257, 383 A.2d 773 (Law Div. 1978), plaintiff attacked the denial of a site plan application approval granted by defendant Dover Township Planning Board on the grounds inter alia that the planning board unlawfully delegated to the planning board engineer the power to approve a change required in the traffic flow arrangements for vehicular traffic contained in the site plan. There the court ruled that because defendant board required the planning board engineer to approve a technical change in the site plan, but did not grant to him the unbridled power to review, approve or deny the site plan, the MLUL scheme was not violated. Lionel's Appliance Center, Inc., supra, 156 N.J. Super. at 270, 383 A.2d 773.
Here the architectural review board's power is in effect final. A recommendatory board it is not. Little solace may be gained from the fact that an aggrieved applicant may appeal the decision of the board to the governing body which created it. Additionally, attorneys and applicants might be concerned about the quality of the record that would be produced from an open public meeting before a governing body otherwise occupied with the day-to-day affairs of running a community. The Legislature has clearly communicated its desire that zoning matters be heard before zoning boards. Sadly, the ordinance creating and empowering the architectural review board imposes a bureaucratic loop upon an already less than linear system. The Legislature in enacting the MLUL sought to avoid untoward delays, to eliminate duplication and to standardize the permitting process. (See, e.g., Manalapan Holding Co. v. Hamilton Township Planning Bd., 92 N.J. 466, 481-482, 457 A.2d 441 (1983)). Those aims are not fostered by the ordinance in question.
*376 This court would hold that § XX and Ordinance 15-13.6(b)8, insofar as they create an architectural review board and delegate to it decision-making powers that properly should reside in planning and zoning boards, violate N.J.S.A. 40:55D-1 et seq.
Summary judgment is hereby granted in favor of plaintiffs.