156 N.J. Super. 257 (1978)
383 A.2d 773
LIONEL'S APPLIANCE CENTER, INC., A CORPORATION OF THE STATE OF NEW JERSEY, JOHN KISSAS, T/A PERKIN'S PANCAKE HOUSE, BERNARD SACHS, T/A BERNIE'S ONE HOUR MARTINIZING, LIONEL'S T.V. SERVICE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, ELMER PURDY, T/A HEARING AID CENTER OF TOMS RIVER AND LIONEL DINERSTEIN, PLAINTIFFS,
v.
JOSEPH A. CITTA, PLANNING BOARD OF THE TOWNSHIP OF DOVER, AND THE TOWNSHIP OF DOVER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 18, 1978.
*259 Mr. John S. Chaplick, Jr., for plaintiffs (Messrs. Kushinsky, Gans and Chaplick, attorneys).
Mr. Daniel J. Carluccio for defendant Joseph A. Citta (Messrs. Citta, Carluccio & Holzapfel, attorneys).
Mr. William J. Kearney for defendant Planning Board (Messrs. Lomell, Muccifori, Adler, Kearney, Ravaschiere & Amabile, attorneys).
*260 Mr. Joseph L. Foster for defendant Township of Dover (Township of Dover, Department of Law).
HAVEY, J.C.C., Temporarily Assigned.
This action in lieu of prerogative writs raises a significant question regarding the powers of a local planning board in its site plan review under the new Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq.
Plaintiffs, interested and aggrieved parties as defined by N.J.S.A. 40:55D-3, seek in this action to set aside a site plan approval granted by the defendant Dover Township Planning Board to the defendant Joseph A. Citta as applicant.
Defendant Citta is the owner of lots 28-34, inclusive, block 744-C in the Township of Dover, County of Ocean. The property consists of approximately 3.47 acres and is located on the southwest corner of the intersection of State Highway 37 and Hooper Avenue, a county roadway.
Commencing in January 1977 Citta made application to various municipal agencies for approvals to construct on the site a "Big Boy Restaurant," a "Roy Rogers Restaurant," both of which are operations of the Marriott Corporation, and a professional office building. According to the site plan proposed to the board, the site has approximately 308' frontage on State Highway 37 and 326' frontage on Hooper Avenue. Citta presented his site plan to the planning board and met with the plans committee of the board, discussing the details of the site plan application.
On June 6, 1977 the plan was certified by defendant board as complete and made the subject of a public hearing in accordance with defendant township's site plan ordinance. On July 11, 1977 defendant planning board, by resolution and after public hearing at two different meetings, granted the site plan approval with certain conditions, two of which are of importance here:
*261 7. That no building permit be issued for the proposed office building for a period of at least 18 months from the date of approval and thereafter until further action by the Planning Board. It is the intention of this condition that the applicant return to the Planning Board after the expiration of the 18 month period so that the Planning Board can evaluate the then existing situation. When the subsequent application is made, the Planning Board may approve the immediate issuance of a building permit or further extend the period of delay of the issuance of a permit. In making this determination the Planning Board shall consider the then existing physical conditions of the area insofar as road patterns are concerned, any plans for future changes and the experience that has been gained of the effect of the site on traffic conditions and safety at the proposed site.
8. That the applicant redesign the entrance and exit located on Hooper Avenue to further discourage any left turn movements either entering or leaving the site. Any such redesign shall be considered technical in nature and shall require only the approval of both the County Engineer and the Dover Township Planning Board Engineer.
It is undisputed that the premises are located in a highway business zone and are properly zoned for the proposed uses. Nor is it disputed that defendant applicant met all other criteria regarding off-street parking, lot size, width, frontage, depth, setback and screening requirements. Also of importance is the undisputed fact that all permits for ingress and egress were properly obtained from the State Department of Transportation and Ocean County Planning Board. Finally, all approvals for drainage, sewer, water and fire safety were obtained by the defendant in accordance with the appropriate municipal ordinances.
Plaintiffs contend that even though defendant Citta meets all of the zoning criteria and has received all local, county and state permits to construct the proposed uses, defendant planning board should not have granted site plan approval because of significant traffic problems which plaintiffs allege exist at the intersection of Route #37 and Hooper Avenue, and which will be intensified if the proposed uses are constructed. They argue further that the conditions imposed by the planning board unlawfully delegated to the board's *262 engineer the power to approve a redesign of an entrance and exit thereby rendering the site plan void. They also argue that the conditional approval of the proposed office building is so vague and speculative that it renders the entire site plan approval unlawful. Lastly, plaintiffs assert that defendant township's Ordinance 1624 is invalid for failure to provide adequate standards for site plan review. The arguments of plaintiff raised four basic issues relating to the application of N.J.S.A. 40:55D-1 et seq., the Municipal Land Use Law, each of which are addressed separately.

I
Should a local planning board during a site plan review consider off-site factors in deciding whether to grant approval?
It is apparent from the record of the planning board meetings that plaintiffs attempted to persuade defendant board to deny the site plan application because of the traffic problems allegedly existing at the intersection where the proposed uses are to be constructed. Traffic consultants were presented by defendant to show that the traffic impact would be minimal. A traffic impact study was presented by plaintiffs in an attempt to show significant impact. Collision diagrams of the county planning board were marked in evidence and considered. It is unclear from the planning board's resolution and from the comments made during the hearings exactly what impact the traffic conditions at the intersection had on the findings of the planning board.
Implicit in plaintiff's argument is that the defendant board did not consider the off-site traffic conditions along the two main roadways and, therefore, improperly granted site plan approval. This raises the issue of what factors a planning board should consider in either granting or denying a site plan application.
*263 Prior to the passage of the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., application for site plan review was a procedure created not by the Legislature but by case law. In Kozesnik v. Montgomery Tp., 24 N.J. 154 (1957), the Supreme Court found that the planning board was singularly appropriate to review site plans by authority of N.J.S.A. 40:44-1.13, now repealed, which provided that the governing body may by ordinance provide for the reference of any other matter or class of matters to the planning board.
As Justice Weintraub stated:
* * * Hence, someone has to be empowered to consider whether the details of a proposed site plan square with the legislated standards and to specify the exact terms necessary to meet the standards. Involved is the very expertise expected of a planning board. It therefore makes good sense to engage the board for that purpose. The situation seems to be precisely what the Legislature had in mind in providing for references to the planning board "before final action thereon by the * * * officer having final authority thereon," here the building inspector. [at 186]
No language in Kozesnik, however, satisfactorily defined the scope of the planning board's power in reviewing site plan applications.
In endorsing the planning board's site plan review power, Judge Hall, for the Appellate Division in Saddle River Country Day School v. Saddle River, 51 N.J. Super. 589 (1958), aff'd 29 N.J. 468 (1959), imposed a limitation on the site plan review procedure:
* * * The device cannot be used, willy-nilly, as a catch-all or depository for just every type of municipal problem. It must be read and interpreted in the light of the context of the whole section, i.e., the broad and general subject of planning, "the planning and physical development of the municipality." In the only judicial appraisals thereof so far, it has been found a valid basis for delegating to the planning board the matter of approval of the details of site plans required by local zoning ordinances as a prerequisite to the issuance of building permits for certain special types of industrial uses. Kozesnik v. Montgomery Twp., 24 N.J. 154, 186 (1957); Newark *264 Milk and Cream Co. v. Township of Parsippany-Troy Hills, 47 N.J. Super. 306, 332 (Law Div. 1957). [at 603]
Prior to the passage of the Municipal Planning Act, under N.J.S.A. 40:55-1.1 et seq. in 1953, now repealed, building inspectors had the responsibility to examine site plans and applications for building permits. See Hill Homeowners v. Passaic Zon. Bd. of Adj., 129 N.J. Super. 170 (Law Div. 1974), aff'd 134 N.J. Super. 107 (App. Div. 1975). Due to the lack of uniformity in the standards to be implemented by these zoning officers, it was not unwise to divest the inspectors of this power and to grant to the local planning board the ministerial duty of considering whether details of proposed plans squared with the legislative standards of the zoning ordinance of the municipality. This administrative function, however, was never intended to include the legislative or quasi-judicial power to prohibit a permitted use. Thus, in Wilson v. Mountainside, 42 N.J. 426 (1964), the Supreme Court reviewed an ordinance which intended to impose additional restrictions on particular uses where the general character of the proposed uses were expressly permitted at the location by the zoning ordinance. The court saw no problems with those regulations if they were intended to go no further than directing site plan review by the planning board, but the court feared the broad powers of the planning board under the terms of the regulations and made clear that the powers of the borough's planning board should be limited to assuring that the plan meets existing municipal standards. The court quoted from the defendant board's trial brief:
* * * "The ordinance in question recognizes that the business use is allowed in the area in question but that it will be allowed only provided it does not interfere with the public health, welfare and safety of the community." Without now going into details, this appears to open Pandora's box and offers the possibility of inquiring into the denial of the right to establish an individual business, otherwise authorized by the ordinance, for reasons which may well have no valid connection with legitimate land use control under the *265 present statutory scheme and, at the least, not protected by sufficient standards. [at 447]
Historically, the Legislature recognized off-site traffic flow and congestion in the streets as proper zoning and planning factors in adopting the zoning ordinances and in granting variances. See N.J.S.A. 40:55-32, now repealed. Prior to the passage of the Municipal Land Use Law, such factors were found generally to be appropriately considered in the legislative powers of the governing body, quasi-judicial powers of the zoning board of adjustment and the subdivision review powers of the planning board. In Bow and Arrow Manor v. West Orange, 63 N.J. 335, 346 (1973), the Supreme Court restated the well established legislative power of a governing body to zone a particular tract for specific use and to consider as a relevant factor "To lessen congestion in the streets." Off-site traffic conditions had always been of significant consideration to a zoning board of adjustment in its function under the repealed law in either granting a hardship or recommending a special reasons variance to the governing body, Rain or Shine Lunch Co. v. Newark Bd. of Adj., 53 N.J. Super. 252 (1958). See N.J.S.A. 40:55-39, now repealed. In Divan Builders v. Wayne Tp. Planning Bd., 66 N.J. 582 (1975), the Supreme Court declared that a municipality may condition a subdivision approval upon the developer's installation of improvements a local governing body may find necessary for the protection of the public interest, including off-site improvements if necessary, if those off-site improvements are required by reason of the subdivision's effect on lands other than the subdivision property. It is clear, therefore, that in 1975 the planning board's power reached beyond on-site conditions in determining whether a subdivision should be approved.
Not only should a site plan review be distinguished from the functions of municipal agencies recited above, it also should not be confused with the historical "special exception" *266 or "special use permit" procedures authorized by N.J.S.A. 40:55-39(b), now repealed. The term "special use" or "special use permits" is explored in Cunningham, "Control of Land Use in NJ by Means of Zoning," 14 Rutg. L. Rev. 37 (1959). It is recognized by the writer that the planning board has no power to use such permits to grant or deny permitted uses.
* * * But the limitations upon the special use permit imposed in Rockhill v. Chesterfield Twp., should be kept in mind; the special use permit cannot be employed to vest in municipal officials the authority to determine the whole future development of a community on an ad hoc, case-by-case basis. And the Municipal Planning Act (1953), furnishes no statutory warrant to substitute the planning board for the board of adjustment as the agency empowered to grant special use permits. [at 81]
In 5 Williams, American Land Planning Law, § 152.01 at 222 (1974), site plan review is defined and contrasted with special use permit functions:
While the distinction in function between special permits and site plan review is perfectly clear, it is important that the distinction be maintained  particularly in those states [like New Jersey] where the planning board is not permitted to take over the special-permit function. If in the course of site plan review the planning board takes over the power to decide whether the proposed use is appropriate at that spot, in terms of its impact on the neighborhood, the traffic it generates, etc., then site plan review becomes assimilated to the special permit function, and there is no difference between them. In order to avoid this, it is therefore important in drawing up a site plan review ordinance to spell out the grounds of review in detail  and so to avoid making everything a special-permit use by the planning board. [Emphasis supplied]
In light of the case law limitations imposed upon a planning board prior to the passage of the Municipal Land Use Law, in its function as the proper agency to review site plans, it is inappropriate to conclude that it had the far reaching powers to deny a permitted use because of some off-site condition. On the eve of the passage of the law the *267 courts had concluded that site plan review was a ministerial and administrative function of the planning board and not one which should render impotent the functions of other municipal agencies, including the legislative function of the governing body, the very entity which appointed the members of the board.
Site plan review for the first time was created as a planning tool under the Municipal Land Use Law, effective August 1, 1976. Site plan is defined in N.J.S.A. 40:55D-7 as follows:
"Site Plan" means a development plan of one or more lots on which is shown (1) the existing and proposed conditions of the lot, including but not necessarily limited to topography, vegetation, drainage, flood plains, marshes and water ways, (2) the location of all existing and proposed buildings, drives parking spaces, walkways, means of ingress and egress, drainage facilities, utility services, landscaping, structures and signs, lighting, screening devices, and (3) any other information that may be reasonably required in order to make an informed determination pursuant to an ordinance requiring review and approval of site plans by the planning board adopted pursuant to article 6 of this act.
A literal reading of the definition of site plan indicates that the planning board's function should continue to be a careful review of the proposed plan in light of all zoning standards to assure that on-site construction and improvements are properly carried out. The Legislature, however, went further. N.J.S.A. 40:55D-39, entitled "Discretionary contents of ordinance," provided, among other things:
An ordinance requiring approval by the planning board of either subdivisions or site plans or both may include the following:
(a) Provisions for off-tract water, sewer, drainage and street improvements which are necessitated by a subdivision or land development, subject to the provisions of section 30. [Emphasis supplied]
Further, N.J.S.A. 40:55D-42 reads in part:
The governing body may by ordinance adopt regulations requiring a developer, as a condition for approval of a subdivision or *268 site plan, to pay his pro-rata share of the cost of providing only reasonable and necessary street improvements and water, sewerage and drainage facilities and easements therefor, located outside the property limits of the subdivision or development. [Emphasis supplied]
The Legislature in adopting these provisions incorporated the findings of Divan Builders v. Wayne Tp. Planning Bd., 66 N.J. 582 (1975). If a site plan is to significantly effect an off-site condition such as traffic, the governing body by ordinance and planning board in its site plan review may require contribution from the developer for the widening of streets as a result of the additional traffic created by the development. In light, however, of the historical limitations of site plan review, it is improper to construe those provisions to mean that the planning board can deny a site plan because of an existing off-site condition at or near the site in question. In its review function the planning board may require the planner to contribute for off-site costs for improvements. In this case it made no such determination.
N.J.S.A. 40:55D-41, entitled "Contents of site plan ordinance," reads:
An ordinance requiring site plan review and approval pursuant to this article shall include and shall be limited to, except as provided in sections 29 and 29.1 of this act standards and requirements relating to:
(a) Preservation of existing natural resources on the site;
(b) Safe and efficient vehicular and pedestrian circulation, parking and loading;
(c) Screening, landscaping and location of structures; and
(d) Exterior lighting needed for safety reasons in addition to any requirements for street lighting. [Emphasis supplied]
The language in this provision of the statute clearly mandates the municipality to implement standards dealing with on-site conditions. In reading this section together with the definition of "site plan" under N.J.S.A. 40:55D-41, the court concludes that the planning board may deny a site plan application only if the ingress and egress proposed by *269 the plan creates an unsafe and inefficient vehicular circulation. No provision in the statute is found that would vest in the planning board the power to deny a site plan because of the intensity of vehicular traffic on adjoining roadways or in other parts of the municipality.
In conclusion, the court finds that defendant planning board had no power to deny defendant's application for site plan approval because of off-site traffic conditions unless it had found that the proposed means of ingress and egress created vehicular traffic problems. N.J.S.A. 40:55D-46 provides that the planning board shall, if the proposed development complies with the ordinance and the act, grant preliminary site plan approval. The record reflects the opposite. The planning board reviewed defendant Citta's proposed plans from January to July of 1977 at various plans committee meetings. Traffic consultants testified for the board with respect to the method by which traffic would enter and exit the site. The board required a change in the proposed island between the entrance and exit on Hooper Avenue to assure that all traffic could only enter southbound and exit southbound thereby creating no traffic hazard to vehicular traffic on the northbound lane of Hooper Avenue. The board granted its approval of the proposed office building plan, reviewable in 18 months, and reserved its right to consider at that time whether the traffic conditions dictated further delay or denial.
After defendant board was assured that all appropriate approvals were granted and the means of ingress and egress were changed on the plan to minimize traffic hazards, the board properly granted site plan approval.

II
Did the planning board unlawfully delegate to the planning board engineer the power to approve a change required in the island under condition No. 8 of the board's resolution?
*270 Clearly the planning board in its function as the appropriate agency for site plan review must rely upon professionals and their expertise in determining whether a site plan is appropriate. As stated in Kozesnik v. Montgomery Tp., 24 N.J. 154 (1975):
* * * Hence, someone has to be empowered to consider whether the details of a proposed site plan square with the legislated standards and to specify the exact terms necessary to meet the standards. Involved is the very expertise expected of a planning board. It therefore makes good sense to engage the board for that purpose. [at 186]
The board must rely upon the expertise of professionals such as engineers and attorneys, which they have the power to employ under N.J.S.A. 40:55D-24. The defendant board wanted to assure that the island at the driveway on Hooper Avenue was increased in size so that no traffic from the site could turn northbound. The change was technical in nature and benefited plaintiffs and the general public, since it assured the planning board that all traffic must proceed southbound.
The case cited by plaintiffs, Piscitelli v. Scotch Plains, Tp. Comm., 103 N.J. Super. 589 (Law Div. 1968), is not analogous. In Piscitelli the court held that a zoning ordinance establishing an architectural review board to which applicants for building permits must submit plans for approval vested unbridled discretion in that review board and, therefore, was an invalid exercise of zoning and municipal police powers. That the defendant board in the instant case required the planning board engineer to approve a technical change in the site plan did not grant to him the unbridled power to review, approve or deny the site plan. The court, therefore, upholds that condition of the planning board's resolution as being a valid exercise of the planning board's review function.

III
Is the site plan approval void as being vague and ambiguous as to the time when the proposed office building should *271 be constructed as provided in condition No. 7 of the board's resolution?
There is no question that the approval of the proposed office building is at best conditional in nature and subject to review by the planning board at a later date. To grant conditional approval for the office building in such a manner is a reasonable exercise of the planning board's power to assure development of the site in a manner consistent with the standards imposed by the zoning ordinance of the municipality. The planning board was concerned that the construction of a third proposed use on the site might create traffic hazards on the site as well as traffic from the site on to the adjacent roadways. The board concluded that it would be appropriate to wait for a period of not less than 18 months before a building permit could be issued. This condition imposed by the planning board acts in favor of plaintiffs and not against them, since it is conceivable that the planning board may at a later date require the applicant to expend sums of money for off-site improvements or to find a different means of ingress and egress for the proposed professional building.

IV
Is defendant township's Ordinance 1624 invalid for failure to provide for site plan requirements in accordance with N.J.S.A. 40:55D-41?
Plaintiff argues that the municipality has failed to provide adequate standards as mandated by the Municipal Land Use Law to carry out the purpose and intent of that act. Plaintiffs overlooked the fact that there was marked in evidence a number of existing ordinances establishing standards with respect to the development of site plans, all of which were complied with by defendant applicant. In N.J.S.A. 40:55D-90(b) municipalities are afforded an additional period of one year from February 1, 1977 to adopt land use regulations which meet substantive requirements *272 of the Land Use Law, and further permits municipalities to continue local regulations which were effective as of February 1, 1977 as interim measures for a period of one year. Defendant's Ordinance 1624, adopted on January 25, 1977 provides that all zoning and developmental regulations which are current at its adoption be continued. Plaintiff's argument seeking to void the ordinance is therefore unfounded.
In conclusion, the court finds that the planning board's resolution granting site plan approval to the defendant Citta was a proper exercise of its planning function and that the conditions imposed were reasonable conditions in light of its powers.
Plaintiffs' complaint is therefore dismissed against all defendants.