266 N.J. Super. 633 (1993)
630 A.2d 387
STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF-APPELLANT,
v.
HOPE ROAD ASSOCIATES, A PARTNERSHIP OF NEW JERSEY, DEFENDANT-RESPONDENT, AND BOROUGH OF EATONTOWN, IN THE COUNTY OF MONMOUTH, A MUNICIPAL CORPORATION, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued June 16, 1993.
Decided August 2, 1993.
*638 Before Judges HAVEY, STERN and BROCHIN.
Kevin E. Rittenberry, Deputy Attorney General, argued the cause for appellant (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Mary C. Jacobson, Deputy Attorney General, of counsel; Mr. Rittenberry on the brief).
Peter H. Wegener, argued the cause for respondent (Bathgate, Wegener, Dugan & Wolf, attorneys; Mr. Wegener, of counsel; Sarah G. Crowley on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
In this condemnation case, the State of New Jersey appeals from a $1,450,000 judgment entered on a jury verdict in favor of defendant-condemnee Hope Road Associates. The State argues that the trial court erred in: (1) admitting evidence concerning defendant's "illusory" 1987 site plan approval which was conditioned upon a permanent access defendant had relinquished to the State in 1983; (2) admitting "speculative evidence" that defendant's site plan would be reapproved based on access to and from the condemned property by way of an unimproved easement in which defendant had no legal interest; (3) admitting the evidence in contravention of a pretrial order, thereby violating the "law of the case" doctrine; and (4) excluding testimony regarding a 1983 appraisal of the subject property. We reverse and remand for a new trial.
Defendant originally owned 16.3 acres of undeveloped land in Eatontown fronting on Hope Road, near its intersection with State Highway 36 and the Garden State Parkway. In a negotiated settlement on October 12, 1983, the State acquired the front-westerly 7.155 acres of defendant's parcel, as well as defendant's access to Hope Road, for the purpose of constructing ramps for *639 the Route 18 freeway. The 1983 deed provided that defendant would have a temporary right of access from its remaining 9.164-acre parcel (the subject property), across the State's parcel to Hope Road "until such time as the aforesaid Freeway is constructed and open for traffic and/or an alternate means of access is provided by the construction of Ferncliff Drive Extension to [defendant's] remaining lands." Ferncliff Drive, an existing roadway, was to be extended to the easterly corner of the subject property, to provide access for the property by way of the extension and other public streets to Wyckoff Road. The extension was also intended to provide a means of access for a cemetery, contiguous to the subject property.
In 1985 or 1986, the owner of the property to the east of the subject property negotiated with the Borough of Eatontown and the State for changes in the proposed Ferncliff Drive extension to accommodate a subdivision known as Deepwood Estates. Deepwood's developer sought to provide access to the cemetery by a means other than the proposed Ferncliff Drive extension. Sometime prior to 1988, the developer and defendant conveyed a twenty-foot easement across their properties to the Borough for the purpose of providing access to and from the cemetery to Wyckoff Road. The "cemetery" easement runs easterly through a portion of defendant's property and bends in a southerly direction across the Deepwood tract several hundred feet where it connects with Wyckoff Road.
The subject property is in the PBO-200 zone, which permits office use. On October 26, 1987, defendant obtained final site plan approval for a 99,900 square-foot office complex. However, the approval was expressly subject to defendant's right of access to Hope Road across the 7.155-acre parcel defendant had deeded to the State in 1983. The resolution granting the approval provided that any change in plans concerning a different means of ingress and egress "will constitute a major change requiring reapplication and public notice." Thereafter, the State constructed the Route *640 18 ramp, thereby precluding defendant's use of the Hope Road access.
On May 3, 1988, the State filed its present complaint condemning the subject property. Prior to trial, the State moved in limine to exclude defendant's appraisal report and related trial testimony "based upon permanent access to Hope Road, ... or along any permanent way other than Ferncliff Drive Extension." By order dated May 13, 1992, Judge McGann granted the State's motion.
During trial, the State's appraiser, Cornelius Guiney, testified that the subject property's highest and best use was residential subdivision and development, notwithstanding that the PBO-200 zone permitted commercial and office building use. Based on his conversations with residents and municipal officials, Guiney was of the view that it was unlikely the Borough would ever approve a site plan for defendant's proposed office complex because of the traffic it would generate onto adjoining residential streets by way of the Ferncliff Drive extension. He rejected the existing site plan approval because it was premised on nonexistent access to Hope Road. Relying upon residential-sale comparables in nearby towns, Guiney concluded that the property was valued at $687,500.
Defendant's appraiser, John Brody, evaluated the property at $1,650,000. He reached that figure using three comparable commercial sales located on Hope Road, within one mile of the property, adjusting for time, location and topography. Over the State's objection, Brody treated the subject property as having a valid site plan approval for development of an office building, and adjusted its value upward accordingly. Ignoring the 1983 deed providing for permanent access by way of Ferncliff Drive, Brody assumed alternative access, probably over the "cemetery" easement. Notwithstanding the State's continued objection, Brody was permitted to express his view that the municipality would look favorably upon this means of access because "it's a very logical course." He explained that the easement to Wyckoff Road is through undeveloped lands and would act as "a nice buffer zone" *641 between Deepwood Estates and the commercial development on defendant's tract. However, Brody also stated that defendant's use of the Ferncliff Drive extension as its means of ingress and egress to and from the office complex would not affect his appraisal.

I
The State argues that Brody should not have been permitted to value the property based on the 1987 site plan approval, since that approval had no legal viability, defendant having relinquished its right of access to Hope Road. It also contends that the trial court committed reversible error by permitting defendant to hypothesize that the site plan would be reapproved based on defendant's use of the "cemetery" easement from the subject property to Wyckoff Road. The State points out that the easement is only twenty-feet wide, is unimproved, and defendant has no property interest in it. It argues that, consequently, the only ingress and egress available for the purposes of measuring the probability of site plan approval was the Ferncliff Drive extension conveyed by the State to defendant in its 1983 deed.
When property is taken under the Eminent Domain Act of 1971, N.J.S.A. 20:3-1 to -50, the measure of damages is the fair market value of the property as of the date of taking, "determined by what a willing buyer and a willing seller would agree to, neither being under any compulsion to act." State v. Silver, 92 N.J. 507, 513, 457 A.2d 463 (1983). "Fair market value" is that value assigned by knowledgeable parties freely negotiating under normal market conditions "based on all surrounding circumstances at the time of the taking." Id. at 514, 457 A.2d 463. A determination of fair market value requires the antecedent finding as to highest and best use of the property. State v. Cooper Alloy Corp., 136 N.J. Super. 560, 567-68, 347 A.2d 365 (App.Div. 1975); State v. Mehlman, 118 N.J. Super. 587, 590, 289 A.2d 539 (App.Div. 1972); 4 Nichols, Law of Eminent Domain § 12B.14, at 138-39 (3rd ed. 1990). "Highest and best" use has been defined as "[t]he reasonably *642 probable and legal use of ... an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value." Chevron U.S.A., Inc. v. City of Perth Amboy, 10 N.J. Tax, 114, 145 (1988) (alterations in original) (quoting American Institute of Real Estate Appraisers, The Appraisal of Real Estate 169 (9th ed. 1987)), aff'd, 237 N.J. Super. 280, 567 A.2d 597 (App.Div. 1989), certif. denied, 121 N.J. 628, 583 A.2d 324 (1990).
The market value, for condemnation purposes, is not limited to value for the use to which the land is actually devoted. Nichols, supra, at 139. It is well-settled that "the owner shall receive the fair market value of the land for any use for which it has a commercial value in the immediate present or in reasonable anticipation in the near future." State v. Gorga, 26 N.J. 113, 116, 138 A.2d 833 (1958) (emphasis added). The "inquiry into relevant facts at the time of the taking may include those that have a bearing on an available future use of the property." Silver, 92 N.J. at 515, 457 A.2d 463. However, "[t]he potential use must be reasonable, and within the realm of possibility in the not too distant future. The property must be available for the potential use asserted, and adaptable for the particular purpose." Nichols, supra, at 140-44 (footnotes omitted). Mere speculation, conjecture or uncertainty must be avoided. Id. at 140.
The permissible uses under the existing zoning ordinance bear crucially upon value. Gorga, 26 N.J. at 116, 138 A.2d 833; State v. Inhabitants of Phillipsburg, 240 N.J. Super. 529, 541, 573 A.2d 953 (App.Div. 1990). Nevertheless, when the proposed use is the property's "highest and best" use but, due to zoning restrictions the property is not available for that use, the condemnee is entitled to show "the probability of a zoning change and its affect on market value." Nichols, supra, at 139. Chief Justice Weintraub, in Gorga, stated the proposition as follows:
It is generally agreed that if as of the date of taking there is a reasonable probability of a change in the zoning ordinance in the near future, the influence of that circumstance upon the market value as of that date may be shown.

*643 [26 N.J. at 116, 138 A.2d 833 (emphasis added).]
Thus, "if the parties to a voluntary transaction would as of the date of taking give recognition to the probability of a zoning amendment in agreeing upon value, the law will recognize the truth." Id. at 117, 138 A.2d 833 (emphasis added).[1]
This view is conceptually no different than the general approach taken respecting the prospect of subdivision approval of a condemned site. In that context,
[t]he market value of the condemned land insofar as that value is presently enhanced by the property's adaptability for subdivision may be shown, except where the courts have determined the evidence to be misleading in some aspect, but the possible future value of each prospective lot if a subdivision was made may not be shown.
[Annotation, Admissibility of Evidence of Proposed or Possible Subdivision or Platting of Condemned Land on Issue of Value in Eminent Domain Proceedings, 26 A.L.R.3d 780, 786, § 2(a) (1969) (footnotes omitted).]
The admissibility of this evidence is within the discretion of the court, and ordinarily depends upon the adaptability and availability of the site for the proposed subdivision, and evidence that the developer has taken some steps toward obtaining the subdivision. Ibid. For example, in Phillipsburg, we held that it was error to permit an expert to testify concerning the value of the condemned property based on subdivided lots. 240 N.J. Super. at 542, 573 A.2d 953. We concluded that the land should have been evaluated as unsubdivided, vacant land, and it was error to permit the jury to value the tract as if it were divided into building lots at the time of taking, since no subdivision plat had been prepared and there were no water, sewer, electric or other improvements to serve the hypothesized subdivision. Id. at 541, 573 A.2d 953.
*644 These principles governing the prospect of a zoning change and subdivision approval should apply with respect to the prospect of a site plan approval, at least where, as here, the site is zoned for the proposed use and the condemnee has taken steps to obtain such approval as of the date of taking. The trier of fact may receive evidence that a willing buyer, without compulsion, would recognize the probability of site plan approval in the near future when determining market value. However, whether there is any evidence supporting such a view is, in the first instance, a question for the trial court to resolve. Cf. Gorga, 26 N.J. at 117, 138 A.2d 833. The market value of the condemned land, insofar as that value may be enhanced by the property's adaptability for such proposed use may be shown, since it bears upon the question as to the highest and best use of the property: "[t]he reasonably probable and legal use of ... [the condemned property], which is physically possible, appropriately supported, financially feasible, and that results in the highest value." Chevron, 10 N.J. Tax at 145 (quoting The Appraisal of Real Estate, supra, at 269).

II
The first evidentiary dispute during trial centered around defendant's introduction of its 1987 site plan approval for its office complex, conditioned on a right-of-way to Hope Road across the property the State had acquired in 1983. It is clear that the site plan, at the date of taking, had no viability because defendant no longer had access to Hope Road. Thus, it was error for the trial court to have allowed Brody to testify that a premium should be added to the value of the property because site plan approval had been acquired. For example, Brody testified that he made a "positive 10 percent" adjustment "because the subject had approvals." We agree with the State that this testimony erroneously permitted the jury to add a premium to the value of the property based on a site plan approval that was no longer legally viable.
The central question for jury resolution was whether, from the viewpoint of a willing buyer and a willing seller, it was reasonably *645 probable the planning board would grant defendant's reapplication for site plan approval, and to what extent that prospect would affect the selling price. As noted, Brody testified that reapproval was probable based on defendant's access to Wyckoff Road by way of the "cemetery" easement. However, Brody's premise presupposed that defendant would have acquired an interest in that easement sufficient to service vehicular traffic generated by its proposed office complex.
The prospect of acquiring the off-site easement, and the township's willingness to accept it as a means of ingress and egress to Wyckoff Road, is not intrinsically different from the reasonable probability of a zoning change. See Salem Country Club, Inc. v. Peabody Redev. Auth., 21 Mass. App. 433, 487 N.E.2d 864, 865-66, review denied, 396 Mass. 1107, 489 N.E.2d 1263 (1986). The trier of fact should be permitted to consider the potential uses of the subject property based on its present zoning, and its adaptability to the proposed use as an office complex. In addition, it should be allowed to consider the reasonable probability that the owner will surmount development handicaps, such as acquiring reasonable access, so that the site may be developed as proposed. Id. 21 Mass. App. 433, 487 N.E.2d at 866; cf. United States ex rel. Tennessee Valley Auth. v. Powelson, 319 U.S. 266, 275-76, 63 S.Ct. 1047, 1052-53, 87 L.Ed. 1390, 1397-98 (1943) (value of land in combination with other parcels); State v. Jeans, 80 Or. App. 582, 723 P.2d 344, 346 (same), review denied, 302 Or. 342, 728 P.2d 867 (1986). Whether favorable action by the public entity "`was so likely to eventuate and so imminent as to deserve being taken into account, is a matter for demonstration' through evidence." Salem Country Club, 487 N.E.2d at 865 (quoting Skyline Homes, Inc. v. Commonwealth, 362 Mass. 684, 290 N.E.2d 160, 162 (1972)). Of course, value cannot be established by guess or conjecture. State v. Faps Realty Corp., 197 N.J. Super. 44, 49, 484 A.2d 35 (App.Div. 1984). Before submission of the question to the jury, there must be some showing of the reasonable probability *646 of such eventuality, and that a willing buyer and a willing seller would consider that probability in reaching a selling price.
The problem here is that the jury instruction did not focus upon these pertinent principles. The trial court charged that:
The zoning, planning and building laws and regulations limit the way a property can be used. If the property is zoned only for one family houses, then industrial or other uses could not be considered as [its] highest and best use, even though there would be otherwise a great demand for such uses.
........
In making a decision of the highest and best use, you may consider where there is a reasonable probability as to permit a use in the future, which would make the property more or less valuable. Similarly, you may consider whether there was a reasonable probability that the subject property would receive a use variance for a particular purpose. You heard some testimony about that. Parties negotiating a price for the sale of the property on May 3rd, may have been governed by those signs.
........
It's your job to determine whether or not there were indications that the approval for construction of an office building would not be granted because permanent access was available only along Ferncliff Drive extension, which traversed a residential area.
When defendant's counsel objected to the charge on the basis that it did not address alternative means of ingress and egress, and left the impression that if the Ferncliff Drive extension was never built, defendant would not obtain site plan approval because its property would be landlocked, the judge gave the following supplemental instruction:
I should tell that under any circumstances, access has to be granted. It can be over residential or other areas, but access has to be granted. They can't have this property landlocked, it can't be just dropped in the middle of some place. Okay, just so you know that.
The State objected to the supplemental charge.
The jury instruction, as supplemented, had the clear capacity to convince the jury that the Ferncliff Drive extension access could be disregarded, and the "cemetery" easement was a viable alternative because some "access has to be granted." The charge does not identify by whom access is to be granted. More important, it does not explain that there must be a reasonable probability, from *647 a willing buyer's and a willing seller's point of view, that defendant would, in the immediate future acquire an interest in the easement and secure approval from the municipality to utilize it as a means of access to Wyckoff Road. It is true Brody testified that the municipality would no doubt look favorably upon the "cemetery" easement as a viable access alternative. Also, there was evidence, although not conclusive, that the State may have expressed an intention to relinquish its plan to extend Ferncliff Drive, and may have consented to the creation of the "cemetery" easement as an alternative access route. However, no evidence was adduced concerning whether defendant could acquire an expanded easement from the owner of Deepwood Estates or the Borough, or that the State would provide that easement by way of condemnation. Properly charged, the jury may have concluded that the "cemetery" easement was not a probable access alternative, and thus the only available access was by way of the Ferncliff Drive extension. If the jury so found, its valuation of the property, based on the State's expert's testimony, may have been altered substantially.

III
If, as the State argues, the Ferncliff Drive extension was the only available means of ingress and egress, the jury instruction must address whether it was reasonably probable, from a willing buyer's and a willing seller's viewpoint, the planning board would grant site plan approval for the office complex with that means of access. As noted, the State's expert testified that the board would reject the plan because of probable resistance by nearby residents because of anticipated traffic from the project. The judge suggested that this may be so in his charge:
It's your job to determine whether or not there were indications that the approval for construction of an office building would not be granted because permanent access was available only along Ferncliff Drive extension, which traversed a residential area.
However, the instruction must also make clear that site plan approval will be based on whether or not an applicant satisfies the standards of the site plan ordinance and the Municipal *648 Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -129, not solely on expected public resistance. The question is whether, from the viewpoint of the willing buyer and willing seller, the applicant will face any legal impediment to approval if it meets the appropriate standards, including providing for safe and convenient vehicular traffic access. See N.J.S.A. 40:55D-41b; see also State v. F & J, 250 N.J. Super. 19, 29, 593 A.2d 352 (App.Div. 1991). Consideration must also be given to whether, if the applicant satisfies all pertinent standards, the site plan may be legally denied based entirely on off-site conditions, such as vehicular traffic that may be generated on existing roadways. See Dunkin' Donuts, Inc. v. North Brunswick Tp., 193 N.J. Super. 513, 515, 475 A.2d 71 (App.Div. 1984); Lionel's Appliance Ctr., Inc. v. Citta, 156 N.J. Super. 257, 264, 383 A.2d 773 (Law Div. 1978); see also PRB Enters. Inc. v. South Brunswick Planning Bd., 105 N.J. 1, 7, 518 A.2d 1099 (1987) ("Although site plan review affords a planning board wide discretion to insure compliance with the objectives and requirements of the site plan ordinance it `was never intended to include legislative or quasi-judicial power to prohibit a permitted use.'" (citation omitted) (quoting Citta, 156 N.J. Super. at 264, 383 A.2d 773)). Although the jury instruction referred to N.J.S.A. 40:55D-41b, it did not fully explain these pertinent legal principles.

IV
As stated, Judge McGann entered a pretrial order dated May 13, 1992, providing that the Ferncliff Drive extension shall constitute defendant's only means of ingress and egress. The order provided:
The subject property acquired within this condemnation action shall be valued with only temporary access to Hope Road and with permanent access only along the extension of Ferncliff Drive and that no testimony shall be permitted ... with regard to any other means of access.
The State now argues that evidence concerning the "cemetery" easement should not have been permitted because the pretrial order constituted the "law of the case." We disagree.
*649 Under the law of the case doctrine, "where there is an unreversed decision of a question of law or fact made during the course of litigation, such decision settles that question for all subsequent stages of the suit." Slowinski v. Valley Nat. Bank, 264 N.J. Super. 172, 179, 624 A.2d 85 (App.Div. 1993) (quoting State v. Hale, 127 N.J. Super. 407, 410-11, 317 A.2d 731 (App.Div. 1974)). See also Lanzet v. Greenberg, 126 N.J. 168, 192, 594 A.2d 1309 (1991); State v. Reldan, 100 N.J. 187, 203, 495 A.2d 76 (1985). The doctrine is grounded in the policy that once an issue is litigated in a suit, relitigation of that issue should be avoided if possible. Daniel v. State, 239 N.J. Super. 563, 581, 571 A.2d 1329 (App.Div.), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990). However, when a judge of equal position resolves an issue on an interlocutory basis, the doctrine "is discretionary and the court is never irrevocably bound by its prior interlocutory ruling." Id. at 581, 571 A.2d 1329 (quoting Sisler v. Gannett Co., 222 N.J. Super. 153, 159, 536 A.2d 299 (App.Div. 1987), certif. denied, 110 N.J. 304, 540 A.2d 1283 (1988)). Moreover, the doctrine "should be applied flexibly to serve the interests of justice." Reldan, 100 N.J. at 205, 495 A.2d 76.
Here, the pretrial order was entered to make clear that defendant's temporary access to Hope Road, provided by the State in its 1983 deed, did not constitute a permanent means of access from the subject property. Judge McGann properly observed that the only permanent access granted by that deed was by way of the Ferncliff Drive extension. However, on defendant's motion to clarify the order, it pressed its argument that the Ferncliff Drive extension may also mean "Ferncliff Drive extension to Wyckoff Road"; that is, by way of the "cemetery" easement which runs generally in the course of the State's proposed extension of Ferncliff Drive. Defense counsel did not want to be precluded from presenting such evidence during the course of the trial. Judge McGann responded "I again am not going to include that here, nor am I precluding it here." The judge added:

*650 You know, we're making a record here and if push comes to shove, ask the trial judge to give me a call on the telephone but I'm not saying that. That's the trial judge's job to figure that one out, not mine.
........
We have a declaration of taking showing Ferncliff Drive access but we're not quite sure where that was supposed to go. That may be arguable one way or the other. But that's not for me.
We agree with defendant that the pretrial rulings by Judge McGann did not foreclose it from presenting evidence of access to and from the subject property by means other than the Ferncliff Drive extension. It appears that the Judge McGann left that question to the trial court, resolution of which would depend upon the evidence adduced during trial. We therefore cannot say that there was a violation of the "law of the case" doctrine.

V
We find unpersuasive and without merit the State's argument that the trial court erred in excluding the State's expert's 1983 appraisal of the subject property. The trial court properly exercised its discretion under Evidence Rule 4 by concluding that admission of that appraisal would no doubt result in extensive and confusing testimony concerning the State's 1983 acquisition of the 7.155-acre front parcel from defendant, particularly since that acquisition was by voluntary settlement, rather than condemnation proceedings.
Reversed and remanded for a new trial.
NOTES
[1] Recently, this court stated the principle as follows:

A jury may consider the prospect of a change in the permitted use if on the date of taking a willing seller and a willing buyer reasonably would have considered the change sufficiently likely that it would affect the selling price. [State v. Caoili, 262 N.J. Super. 591, 593, 621 A.2d 546 (App.Div.), certif. granted (1993).]