855 A.2d 628 (2004)
372 N.J.Super. 138
Charles DeMARIA and Michael Golub, Plaintiffs,
v.
JEB BROOK, LLC, the Woodlands at Neptune and Planning Board of the *629 Township of Neptune, Defendants.
Superior Court of New Jersey, Law Division, Monmouth County.
Decided October 3, 2003.
*630 Michael Rubino, Spring Lake, for plaintiffs DeMaria and Golub (Pandolfe Shaw & Rubino, attorneys).
Glenn S. Pantel (Drinker Biddle & Reath, attorneys), Florham Park and Douglas K. Wolfson (Greenbaum Rowe Smith Ravin Davis & Himmel, attorneys), Woodbridge, for defendants JEB Brook and the Woodlands at Neptune.
Gordon N. Gemma, Montvale, for defendant Neptune, Township Planning Board.
O'HAGAN, J.S.C.
Should a reviewing court allow site plan approval to stand where the Planning Board committed significant procedural and substantive errors in violation of the Municipal Land Use Law but the blameless applicant complied with all applicable zoning and site plan ordinances?
The errors committed by the Planning Board, among others alleged, included a failure to swear in certain witnesses as well as frequent and rather confusing changes of the rules as the hearing progressed. In the body of this opinion, comment will be made regarding these and other errors alleged by plaintiffs.
For reasons hereafter expressed, the court concludes the Planning Board's resolution may not be overturned and, therefore, plaintiffs' appeal is denied.
The facts that underlie this controversy, in their simplest form, are stated as follows: Defendant, JEB Brook, LLC, which trades as The Woodlands at Neptune, is the contract purchaser of property known as Lots 9.01 and 10 in Block 10,000, as shown on the tax records of Neptune Township. The property measures some nineteen plus acres.
JEB Brook filed its application with the Neptune Township Planning Board seeking site plan approval to develop the property with a total of 192 rental units in nine separate buildings, each of which rise some three stories. The plans, as submitted, complied fully with applicable ordinances and, therefore, JEB Brook did not seek any variances nor, indeed, any waivers. Nonetheless, the development is out of character with some of the neighboring and nearby properties. Given the number of units, the buildings' height, and expected traffic, among other concerns, objectors, including plaintiffs Charles DeMaria and Michael Golub, attended the Planning Board hearings in large numbers. It is the Board's conduct during these three hearings leading to site plan approval which underlies plaintiffs' appeal.
Any neutral observer reading the transcripts of the hearings is forced to conclude that the procedures followed by the Board at the hearings were, at best, problematic. For instance, although the Board sought testimony from its consulting engineer, it failed to swear him in. Nor did the Board administer the oath to its planner, although the planner, as well, was asked to give testimony. The Municipal Land Use Law, N.J.S.A. 40:55D-10, requires that witnesses offering testimony *631 before the Board be sworn. Moreover, the Board failed to swear in plaintiffs and other objectors although it now contends the objectors were given the opportunity to be heard and actually testified at the hearing. As will be set forth in detail below, the Board, as well, inexplicably changed the rules governing conduct of the hearing.
The Municipal Land Use Law, N.J.S.A. 40:55D-10(b), provides, "The municipal agency shall make the rules governing hearings."
Certainly the adoption of rules that apply throughout and to all concerned promote the opportunity for an orderly hearing. Paramus Multiplex Corp. v. Hartz Mtn. Ind., Inc., 236 N.J.Super. 104, 564 A.2d 146 (Law Div.1987). If the rules are clear and appear fair, participants are more likely to respect the result as well as the Board which ultimately resolves the dispute.
In adopting N.J.S.A. 40:55D-10(b), the Legislature sought to eliminate circumstances such as here where rules change from hearing to hearing and, indeed, at various times in the very same hearing. It is important to note that this ad hoc rule making was not pursuant to a vote by the majority of the Board. Rather, two different members presided over the second and third hearings and each advised they were changing the manner in which objectors were to participate. Thus, the rule change announced at the second hearing conflicted with established Board procedures, while the two rule changes announced at the third hearing not only conflicted with those announced at the second, but, indeed, with each other. At the second hearing, the Acting Chairwoman announced each objector had five minutes to cross-examine one particular witness offered by the applicant. Testimony by the objectors, it was announced, was to come later. At the third hearing, the Chairman initially announced each objector was to have three minutes to cross-examine any of the applicant's witnesses with the opportunity to comment later on in the hearing. Thereafter, the Chairman announced objectors would have a total of three minutes to both cross-examine the applicant's witnesses and to offer their own individual comment or testimony.
Clearly, the Board's conduct during the hearings, at best, was confused. It is obvious that ad hoc rule making to meet the perceived exigencies of the moment does not inspire confidence that the Board is fairly deciding the application. It is well established that planning boards act in a quasi-judicial fashion. Amato v. Randolph Tp. Planning Bd., 188 N.J.Super. 439, 453, 457 A.2d 1188, 1195-1196 (1982). As with the resolution of any contested issues, all participants at municipal hearings are entitled to a fair and honest resolution of their dispute. Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 280, 212 A.2d 153, 159-160 (1965). Just as certainly, municipal boards should be mindful of the need to manifest their impartiality not only in the decision finally rendered, but similarly in their treatment of objector and applicant throughout the hearing.
The plaintiffs and other objectors at the Neptune Township Planning Board expressed serious doubts as to the Board's impartiality. In part, the objectors, as will be hereafter established, have not focused on the limited discretion allowed the Board given the nature of JEB Brook's application which complied in all respects with applicable ordinances. On the other hand, there is a basis for the objectors to have expressed confusion given the frequent change in procedures as the hearing progressed. Indeed, even if one focuses only on the last version of the rules, it is a fact that no objectors were sworn when they *632 gave their comments. This failure suggested to the objectors the Board's mindset was to completely discount or even reject any comment the objectors might make.
Some of the objectors have contended they were denied the opportunity to be heard at all. However, by no means does the record clearly support this contention. Indeed, a fair reading of the events at the hearings suggests the contrary. That is, the Board allowed very significant time, often beyond three minutes or five minutes as the case might be, for both comment and cross-examination by objectors.
There can be no doubt that the conduct of a planning board hearing at times can be difficult, especially when a large application is under consideration. The Board is often confronted with a circumstance such as here where the applicant is well prepared and offers testimony by qualified civil and traffic engineers, architects, and on some occasions, perhaps, licensed planners. By way of contrast, objecting, neighboring property owners sometimes can rationally offer only the bare fact of their opposition. Obviously, this difference in presentation is particularly troublesome, as here, when the applicant complies to the letter with applicable zoning and site plan ordinances.
Surely, when the proposed development is large and appears to be in stark contrast to the developed character of some nearby areas, yet complies with all applicable ordinances, the Board's explanation of its responsibilities can be difficult. In that circumstance, the maintenance of order at the hearing can become problematic.
In this circumstance and others, it sometimes happens that participants lose site of the need to deal courteously with each other. Frequently it is the applicant and the Board which are at odds. Other times, as here, it is the objectors and the Board who are at odds. In the absence of counsel representing objectors, the difficulties in communication become compounded. Objectors sometimes become frustrated, but it is accurate to say they are ill served by acts or words of intemperance. By the same token, the Board, although comprised of volunteers, must understand it is charged with the responsibility to resolve the dispute. Golaine v. Cardinale, 142 N.J.Super. 385, 399-400, 361 A.2d 593, 600-601 (Law Div.1976). On occasion, as was done here, municipal boards sometimes mistakenly treat objectors as one large indivisible mass without proper recognition that their concerns can be different or distinct depending upon a variety of circumstances. Those circumstances include, but are not limited to, the proximity of the objector's property to the applicant's, traffic patterns, drainage paths, etc.
Logic suggests that boards, such as the Planning Board here, should be most interested in hearing from those objectors who will likely sustain the most impact if the site is developed as planned. The Municipal Land Use Law has recognized this circumstance by requiring that only property owners within 200 feet of a site must be served with individual notice of the hearing by certified mail, return receipt requested. N.J.S.A. 40:55D-10(i). Others owning property or living within the municipality are given broad notice by publication in the newspaper.
Given the disparate notice requirement, a board such as the Neptune Township Planning Board would be well within its rights to hear comments from those objectors who live nearby the subject property before others are given the opportunity to speak. Here, even those residents of Neptune Township who live several miles from the development, across town as they put *633 it, were given the same opportunity to be heard as neighboring residents. Although it is a matter within the Board's control, since it has the authority to promulgate the rules, any rational approach requires that nearby residents be given a reasonable and appropriate opportunity to voice their concerns before a planning board or, indeed, a zoning board of adjustment hears from those who are only remotely, if at all, affected by the development.
Rather than approach the matter in a logical commonsensible fashion, the Board treated the objectors as one unified, indivisible mass of people without in any manner distinguishing between and among the objectors. It must, however, be determined whether the Board denied the objectors due process. That is, courts cannot, nor should they, "micromanage" the manner in which municipal agencies conduct their hearings. Baghdikian v. Bd. of Adjustment of Bor. of Ramsey, 247 N.J.Super. 45, 50, 588 A.2d 846, 848-849 (App.Div.1991). Rather, it is only when there has been a denial of fundamental fairness that courts have authority to interfere. Polillo v. Deane, 74 N.J. 562, 579, 379 A.2d 211, 219 (1977).
In making the judgment as to whether the objectors have been denied their due process, courts must consider, of course, the factual context in which the dispute arises. For instance, the decision of a zoning board of adjustment was set aside when it accepted in evidence a petition opposing an application since it was clear the Board heavily relied upon the same in its denial of the application. Seibert v. Dover Tp. Bd. of Adjustment., 174 N.J.Super. 548, 417 A.2d 72 (Law Div.1980). On the other hand, when the petition was received in evidence, but not relied upon, the court did not interfere. Lincoln Heights v. Tp. of Cranford, 314 N.J.Super. 366, 714 A.2d 995 (Law Div.1998). Other times, certain approvals may have been set aside when board members have interacted with both applicants and objectors while making a site inspection. A court did not interfere, however, when board members, although acknowledging their interaction with interested parties in the same circumstance, clearly established their resolution of the issue was based upon evidence offered at the hearing. Smith v. Fair Haven Zoning Bd., 335 N.J.Super. 111, 120, 761 A.2d 111, 116 (App.Div.2000).
As the circumstances have warranted, courts have expressed this need for fundamental fairness in the conduct of hearings by municipal agencies in a myriad of ways. The Supreme Court, in the leading case of Kramer v. Bd. of Adjustment, Sea Girt, supra, 45 N.J. 268, 212 A.2d 153, put it best and most directly, observing that hearings must be conducted in a manner "consistent with fundamental standards of due process," expressing that objectors are entitled to a fair hearing and noting the factfinders are bound in "good conscience to consider the evidence, to be guided by that alone and to reach ... conclusion uninfluenced by extraneous considerations." Id. at 280, 212 A.2d at 159 (citing Penna. R.R. Co. v. N.J. State Aviation Comm'n, 2 N.J. 64, 70, 65 A.2d 61, 64 (1949)). The Court went on to conclude, however, that a board's decision should not be overturned if substantial justice was in fact achieved notwithstanding the board's errors.
That is to say, not all errors mandate a reversal. Baghdikian v. Bd. of Adjustment, supra, 247 N.J.Super. 45, 588 A.2d 846. Rather, it is only when the error has the potential to impact upon a fair result should reversal be required. Amato v. Randolph Tp. Planning Bd., supra, 188 N.J.Super. at 452, 457 A.2d at 1195. It follows, therefore, that a court *634 should closely scrutinize a board's decision when procedural or indeed substantive error is closely intertwined with the exercise of discretion. On the other hand, courts should be reluctant to interfere when the board's discretion is limited.
Here the Board had little, if any, discretion to deny JEB Brook's site plan application since it satisfied applicable zoning and site plan ordinances. PRB Enters. Inc. v. South Brunswick, 105 N.J. 1, 7, 518 A.2d 1099, 1101-02 (1987); Lionel's Appliance Ctr., Inc. v. Citta, 156 N.J.Super. 257, 264, 383 A.2d 773, 776-777 (Law Div.1978). The Board may not turn down an application in that circumstance because of off-site conditions, Dunkin' Donuts of N.J. v. Tp. of North Brunswick, 193 N.J.Super. 513, 515, 475 A.2d 71, 72-73 (App.Div.1984); Lionel's Appliance Ctr., Inc. v. Citta, supra, 156 N.J.Super. at 269, 383 A.2d at 779, nor because of its conclusion that the allowed or permitted use, in fact, is not appropriate for the property or the neighborhood. See Sartoga v. Bor. of West Paterson, 346 N.J.Super., 569, 582-83, 788 A.2d 841, 848-49 (App.Div.2002). Certainly, when the application conforms in all respects with applicable ordinances, the Board may cajole or use its powers of persuasion in its dealings with the developer so as to achieve the best development from a planning perspective, but it may not deny the application. Pizzo Mantin Group v. Tp. of Randolph, 137 N.J. 216, 232-33, 645 A.2d 89, 97-98 (1994).
When looked at in that perspective, it is clear this court may not, and should not, overturn the approvals granted by the Neptune Township Planning Board. That is, all of the applicant's witnesses were sworn. The applicant, through such witnesses, clearly demonstrated that there was no deviation between the plans submitted and applicable ordinances. The observation of the Board's professionals, even though they were not sworn, for the most part, corroborated what the Board already knew, regarding the applicant's compliance with applicable ordinances. In that same connection, the Board's professionals opined as to the expected actions of the Monmouth County Planning Board. Moreover, even as to the objectors themselves, although they were not sworn, the Board, on the basis of their comments, directed modifications in JEB Brook's plans. In one instance, the Board caused a change in the buffer between the applicant's property and adjoining property. Other times the Board considered the public's comments as to the pitch of the roof on the buildings. Thereafter, based on the Board's persuasion, the applicant complied. Still again, the Board considered traffic patterns and the timing of a traffic light. In short, although not following the Municipal Land Use Law, the Board took note of the concerns of nearby property owners and directed the applicant to address the same as, indeed, warranted under the circumstances. Further, while there were conflicting and confusing instructions concerning the time in which objectors might comment upon the applicant's plans, it is a fact that many, if not the majority, of the objectors offered comments concerning the application.
In that sense, the Board did not strictly adhere to its time limits nor as to the manner in which objectors might address the Board and/or the applicant's plans.
The plaintiffs also complain that the Chairman participated in the third and final hearing without listening to the tape or reading the transcript as required by the Municipal Land Use Law, N.J.S.A. 40:55D-10.2. It is nonetheless clear from the record that the Chairman did not vote, nor has it been established that he improperly attempted in some manner to influence *635 the vote of those Board members who were eligible. The Chairman was not in a conflict position, he merely failed to take the necessary steps to achieve eligibility to vote on the application.
In this circumstance, the statute prohibits merely the vote of any board member who does not make the required certification. It goes no further, and nothing that occurred here warrants any action on the part of the court.
Finally, plaintiffs are on no more solid ground when they urge reversal of the Board's approval on the basis no one formally moved the resolution in favor of JEB Brook.
It is true the Board could have, and should have, moved the resolution using more formal words of approval, yet, from the court's perspective, there was no confusion. The context makes it clear that the Board member, in fact, moved to approve the resolution. This view is confirmed by statements made by those four Board members who voted to approve the resolution, imposing conditions upon the approvals and, indeed, by the two Board members who cast their votes against the application.
Certainly, as plaintiffs point out, the use of formal words and/or a formal motion to approve an application serve to minimize, if not eliminate, opportunities for confusion. On the other hand, however, no particular or precise set of words are necessary to move a resolution. Allied Realty v. Upper Saddle River, 221 N.J.Super. 407, 534 A.2d 1019 (App.Div.1987). In point of fact, here it cannot be forgotten that the Board, within the time allowed by statute, adopted a formal resolution memorializing the approvals granted JEB Brook. N.J.S.A. 40:55D-10g(1). Certainly this memorialization helps us to understand the Board's previous action.
For reasons expressed, plaintiffs' complaint is dismissed.